SPALDING TRUST (ENTITY) BY THE SPALDING COMPANY, TRUSTEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 57127.   Promulgated July 8, 1936.

*Arthur McGregor, Esq.*, for the petitioner.
*Arthur L. Murray, Esq.*, for the respondent.

OPINION.

ARNOLD: In this proceeding petitioner appeals from the determination by respondent of a deficiency in income tax for the calendar year 1928 in the amount of $3,502.17, and assigns as error the action of the respondent (1) in failing to allow as a deduction from income for 1928 depreciation sustained in the amount of $17,056.50, and (2) in refusing to allow as a deduction from income for 1928 a net loss alleged to have been sustained by petitioner during the calendar year 1927.

The facts were stipulated by the parties substantially as follows:

Petitioner is a trust estate created and existing under and by virtue of a Declaration of Trust dated October 5, 1909, * * * The Spalding Company has acted as trustee ever since the date of Declaration of Trust and is now the duly appointed, qualified and acting Trustee of said trust estate.

During the calendar year 1929 The Spalding Company acting as trustee for the Spalding Trust made two returns of income for the calendar year 1928, one a fiduciary return on form 1041, * * * wherein it disclosed a net income of $75,259.79 distributable under the provisions of said Declaration of Trust, and the other return on form 1040, * * * wherein there was reported profit from the sale of stocks, bonds, etc. in the sum of $75,808.02. On this return there was deducted an item purporting to be an operating loss carried forward from the calendar year 1927 in the sum of $15,253.63. Respondent in his notice of determination has disallowed this item of $15,253.63 as a deduction from 1928 income.

During the year 1928 Petitioner owned the following depreciable assets which it held in said trust during the entire calendar year. A reasonable allowance for exhaustion, wear and tear on these assets is shown in the following tabulation:

| Description | Cost | Rate | Depreciation sustained |
|---|---|---|---|
| Spalding Building | $601,253.94 | 1½% | $9,018.81 |
| Perkins Hotel | 147,976.16 | 3% | 4,439.28 |
| 2nd & Adler Sts. Bldg | 26,526.61 | 4% | 1,061.14 |
| 2nd & Front Sts. Bldg | 23,300.76 | 4% | 932.03 |
| 6th & 8th & Front St. Bldg | 15,131.10 | 4% | 605.24 |
| Furniture and Fixtures | 10,000.00 | 10% | 1,000.00 |
| Total depreciation sustained | | | 17,056.50 |

In determining the taxable income to this trust estate taxable to this Petitioner as trustee, Respondent has not allowed any of this depreciation.

During the year 1928 Petitioner made two returns of income for the calendar year 1927, one a fiduciary return on form 1041, * * * wherein it disclosed an income of $156,679.74 as distributable under the provisions of the Declaration of Trust, * * * and the other return on form 1040, * * * wherein it reported the income from the sale of a portion of the trust assets in the sum of $1,802.87 and took as a deduction depreciation on the above referred to trust assets in the sum of $17,056.50, which showed a loss for the calendar year 1927 to the trust estate of $15,253.63. As indicated above this loss was carried forward and taken as a deduction on Petitioner's 1928 return form 1040, on line 16 thereof, all of which the Respondent has disallowed as a deduction from income for said year.

## The trust instrument provided in part as follows:

First: Said trustee shall receive the rents and profits of said property, both real and personal, and pay them to the persona hereinafter named as hereinafter provided; and in order that good rents and profits may be derived from said property at all times during the continuance of this trust, and in order to facilitate the handling of this trust by said trustee, it shall have full and absolute power; to contract in respect thereto, to sell, convert, lease, let, improve, exchange, invest or re-invest in any kind of property; * * * in other words, said trustee shall have full power subject only to the obligations to pay the rents and profits as hereinafter provided, to manage and control said property, both real and personal to all intents and purposes as it could do if said property belonged to it in fee simple absolute. * * * Said trustee shall always keep and maintain said property hereby conveyed to it, both real and personal, together with the rents and profits therefrom as a separate and distinct fund, and upon any sale or exchange the new property so acquired of whatever kind it may be, shall become and constitute a part of such fund.

Second: During the lifetime of said trustor, said trustee shall pay to said trustor and upon his demand, not exceeding fifty per cent (50%) of the entire annual rents and profits of said property, both real and personal, after deducting all expenses incident to the management and maintenance of said property, and all sums paid or required for taxes, assessments or other charges imposed upon such property and the expense of administering the trust created hereby as hereinafter provided.

During the lifetime of said trustor, said trustee shall pay to each of the five children of said trustor, to-wit: Rufus P. Spalding, James M. Spalding, Julia M. Senni, Catherine L. Bodrero and Alice M. Bonzi, or their lawful issue by representation, if issue there be, five per cent (5%) of the said entire annual rents and profits of all of said property, both real and personal; but should

the directors of said trustee deem it necessary, or to the best interests of any of one or more of said five children that he or she, or his or her issue, should receive a sum greater than five per cent (5%) of said rents and profits, then the directors of said trustee may authorize the payment by said trustee to such child, or children, or issue, of any additional sums of money out of said rents and profits which said directors may deem advisable. But the total payments to said children, or their issue as hereinabove provided, shall in no event, during the lifetime of said trustor exceed the sum of fifty per cent (50%) of said entire rents and profits.

Should the said trustor not demand, during any year, from January first to December 31st, from said trustee the said entire fifty per cent (50%) of said rents and profits or should any of the remaining fifty per cent of the rents and profits not be paid to the children of said trustor, or their issue, as hereinabove provided, either on account of the death of any one of said children without issue, or because the directors of said trustee shall not have deemed it advisable to pay all of said remaining fifty per cent to said children, or their issue during any such year, then any such rents and profits so remaining unpaid shall accumulate and become a part of the principal of the trust estate hereby conveyed.

Third: After the death of said trustor, said trustee shall pay to the said five children of said trustor, or their issue, as hereinafter provided, in equal shares, and in lieu of the sums hereinbefore provided to be paid, the entire rents and profits of all the said property, both real and personal. * * *

The trust instrument further provides that upon the death of the last of the children of the trustor, the trust estate shall go to and be vested in their issue and upon failure of such issue to the legal heirs of the trustor. It also provides that the trustor shall have no right to revoke the trust.

## Issue 1—1928 Deduction for Depreciation.

The returns filed by the petitioner, attached to the stipulation of facts and referred to above, disclose that for the year 1927 petitioner distributed the ordinary net income to the beneficiaries computed without deducting depreciation, as shown by form 1041, but deducted the agreed depreciation in the amount of $17,056.50 on form 1040, which directly gave rise to the item of $15,253.63 carried forward and claimed as a net loss deduction on the 1040 return for the year 1928. Thus, for the year 1927 petitioner did not reserve out of the ordinary income distributed to the beneficiaries an amount sufficient to make good the loss suffered by way of depreciation of the trust assets.

This method was not followed in the subsequent year. In the return on form 1041 for 1928 petitioner deducted the depreciation from ordinary income and distributed the balance to the beneficiaries, thus maintaining the trust capital intact out of ordinary income, and claiming as a deduction from capital gain reported on form 1040 only the alleged 1927 net loss, which represented the depreciation sustained in 1927 in excess of the capital net gain for that year.

The Revenue Act of 1928, in section 23 (k), provides that in computing net income there shall be allowed as deductions, among other things, a reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence, and in the case of property held in trust, the allowable deduction shall be apportioned between the income beneficiaries and the trustee in accordance with the pertinent provisions of the instrument creating the trust, or in the absence of such provisions, on the basis of the trust income allocable to each.

In article 201 of Regulations 74, respondent construes these provisions of the statute as follows:

* * * For example if the trust instrument provides that the income of the trust computed without regard to depreciation shall be distributed to a named beneficiary, such beneficiary will be entitled to the depreciation allowance to the exclusion of the trustee, while if the distributable income shall first make due allowance for keeping the trust corpus intact by retaining a reasonable amount of the current income for that purpose, the allowable deduction will be granted in full to the trustee.

That the quoted regulation embodies a correct construction of the statute is not questioned by either party to this proceeding. The controversy concerns the proper interpretation of the trust instrument, that is to say, whether the trust instrument requires the trustee to distribute the ordinary income computed without regard to depreciation, or whether it contemplates that the trustee shall first make due allowance for keeping the trust corpus intact by retaining a reasonable amount of the current income for that purpose.

The contemporaneous construction placed upon the trust instrument by the interested parties, so far as disclosed, does not afford aid in answering this question, since, as above pointed out, the ordinary income for 1927 computed without regard to depreciation was distributed to the beneficiaries, while the distributable income for 1928 was computed by first deducting an amount sufficient to make good the depreciation sustained. We must, then, examine the terms of the trust instrument itself to determine the intention of the trustor on this point.

The trust instrument, the pertinent provisions of which are set out above, makes no provision as to depreciation of trust assets and does not authorize the trustee to set aside a sum as a charge for depreciation on the property.

It contains complete provisions for the management of the trust estate and the distribution of the "entire annual rents and profits" from the property to the beneficiaries "after deducting all expenses incident to the management and maintenance of said property, and all sums paid or required for taxes, assessments or other charges

imposed upon such property and the expense of administering the trust." It further provides that all income not paid to the beneficiaries under the terms of the trust, be added to the corpus. The setting aside of a sum as a charge for depreciation would amount to the creation of a sinking fund for replacement. The trust instrument makes no provision for such a fund nor does it direct that the corpus should be preserved intact. Undoubtedly the trustor might have provided that depreciation should be deducted from the net income accruing to the beneficiaries had he so desired, but no such provision was made. Moreover it is specifically provided that it is the purpose of the trust to provide income for the beneficiaries, and that the life beneficiaries shall have no interest in the corpus of the trust. In our opinion the trust goes no further than to require (or authorize) the trustees to maintain the property in such good condition as results from the making of ordinary and necessary repairs. In the absence of a provision in the trust instrument authorizing the trustee, in determining the distributable income, to first keep the trust corpus intact we think the entire net income is distributable to the beneficiaries. Cf. *F. E. Hubbell*, 14 B. T. A. 1040; affd., *Hubbell* v. *Burnet*, 46 Fed. (2d) 446; *In re Chapman*, 66 N. Y. S. 235; *Baltzell* v. *Mitchell*, 3 Fed. (2d) 428, 430; *Whitcomb* v. *Blair*, 58 D. C. App. 104; 25 Fed. (2d) 528, and that the loss, if any, from depreciation must be borne by the remaindermen. Cf. *Kaufman* v. *Commissioner*, 44 Fed. (2d) 144; *Merle-Smith* v. *Commissioner*, 42 Fed. (2d) 337; *Codman* v. *Miles*, 28 Fed. (2d) 823; *Codman* v. *Commissioner*, 50 Fed. (2d) 763. It follows that under section 23 (k) of the Revenue Act of 1928 and article 201 of Regulations 74, the petitioner is not entitled to deduct the depreciation claimed.

### Issue 2—1927—Alleged Loss.

Petitioner contends that it suffered a statutory net loss of $15,253.63 from the operation of its business in 1927, which it is entitled to carry forward and deduct from gross income in computing its taxable net income for 1928. For 1927, petitioner filed two returns, one on form 1041 (fiduciary return) showing the net ordinary income distributable to the beneficiaries, computed without deducting depreciation, in the amount of $156,679.74. The other return on form 1040 reported capital gain of $1,802.87, less deduction for depreciation of $17,056.50, resulting in the purported net loss of $15,253.63.

Respondent asserts that petitioner in fact suffered no loss in 1927, and hence there is no net loss to carry forward and deduct from 1928 income. Respondent's position on this point, we think, is well taken.

Section 206 (a) of the Revenue Act of 1926 defines the term "net loss" as meaning the excess of the deductions allowed by section 214 or 234 over the gross income, with certain exceptions and limitations not presently material. Section 234 deals with deductions allowed corporations, while section 214 specifies the deductions allowed individuals. Section 219 provides that the net income of a trust shall be computed in the same manner and on the same basis as provided in section 214, which relates to the computation of net income of individuals, and further provides that there shall be allowed as an additional deduction in computing the net income of a trust the amount of the income for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries.

It is plain that under the above provisions of the statute the net loss of a trust estate must be computed in the same manner as in the case of an individual taxpayer. A net loss in the case of an estate, therefore, is the excess of the deductions allowed by section 214 over the gross income, without taking into consideration the additional deduction of the amount of income currently distributable to the beneficiaries allowed by section 219. The alleged net loss claimed by petitioner here results from the deduction allowed under section 219, when both of the 1927 returns are considered, or as it might otherwise be stated in referring only to the 1040 return, the amount claimed represents the excess of a *portion* of the deductions allowed under section 214 over a *portion* of the gross income. Viewed from either perspective, it is not a statutory net loss.

Petitioner's gross income for 1927, as shown by the returns, consisted of $192,909.12 of ordinary income and $1,802.87 of capital gain, or a total gross income of $194,711.99. It claimed deductions from ordinary income of $36,229.38 on form 1041, allowable under section 214, and from capital gain on form 1040 a deduction for depreciation of $17,056.50, or total deductions allowable under section 214 of $53,285.88, leaving an aggregate net income, comprising both ordinary distributable income and nondistributable capital gain, in the amount of $141,426.11. The deductions allowed by section 214, as claimed in both returns, not only do not exceed the gross income, but the gross income exceeds such deductions by the amount above stated. Petitioner, therefore, sustained no statutory net loss, nor in fact a loss of any kind, for the year 1927.

Respondent's action on the second issue is approved.

*Judgment will be entered under Rule 50.*