ESTATE OF MARY JANE LITTLE, DECEASED, BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 58688.  Filed July 21, 1958.

*William L. Kumler, Esq.*, for the petitioner.
*Donald P. Chehock, Esq.*, for the respondent.

OPINION.

MULRONEY, *Judge:* Respondent determined deficiencies in the petitioner's income tax as follows:

| Year | Deficiency |
| --- | --- |
| 1949 | $22,899.07 |
| 1950 | 23,909.64 |
| 1951 | 29,912.41 |
| 1952 | 30,731.00 |

The issue is whether the decedent, a life beneficiary under a trust, is entitled to a portion of the deductions for depletion and depreciation on the trust oil properties or whether the trust is entitled to the entire deduction for such items.

All of the facts have been stipulated and are found accordingly.

Mary Jane Little died on or about September 10, 1953, a resident of Los Angeles County, California. Decedent filed her Federal in-

come tax returns for the years 1949, 1950, and 1951 with the then collector of internal revenue and for the year 1952 with the district director of internal revenue for the sixth district of California, Los Angeles, California. The Bank of America National Trust and Savings Association is the duly appointed and acting executor of the estate of Mary Jane Little, deceased.

Decedent was the mother of Gloria D. Foster, who died on or about July 30, 1943, a resident of Dallas County, Texas. For many years prior to her death, Gloria conducted an oil business, owning, operating, developing, and maintaining many producing oil and gas leases in the East Texas oil field. At the date of her death in 1943 she owned undivided interests in approximately 84 producing oil wells in this field and in the physical equipment used in connection therewith. The oil income distributed to Mary Jane Little as beneficiary of the Gloria D. Foster Trust during the years here involved (from which depletion and depreciation deductions here at issue were taken) was derived from these oil properties, or other subsequently acquired similar oil properties.

The last will and testament of Gloria D. Foster, deceased, was duly probated by order of the County Court of Dallas County, Texas, on August 16, 1943. The will named L. C. Webster, Sol Goodell, and T. A. Knight executors. After providing for a few specific bequests of cash and personal effects, the residue of Gloria's property was devised and bequeathed to L. C. Webster, T. A. Knight, and Sol Goodell as trustees. The trust provisions of the will are contained in Article V and in this portion of the will said trustees were given broad authority and discretion in connection with the management of the corpus, investments, and reinvestments. Paragraph 2 of Article V of the will provided, in part, that the "decision of trustees as to what property is corpus and what property is income of [the] estate, shall be final and binding on all parties at interest hereunder." The will made no mention of the treatment of depletion and depreciation deduction as between income beneficiaries and the trust. Paragraphs 8 and 9 of Article V of the will provided as follows:

8. Out of the net income of my estate I direct that Two Hundred ($200.00) Dollars per month shall be paid to my faithful servant, Eva Culbertson, during her lifetime, and One Hundred ($100.00) Dollars per month shall be paid to my mother-in-law, Mrs. Jeremiah Foster, during her lifetime and thereafter to my sister-in-law, Evelyn Foster, during her lifetime. All other net income from my estate shall be paid to my mother, Mary Jane Little, during her lifetime. If during any calendar year after the calendar year during which I die, while my mother is alive, the net income so paid my mother is less than Twelve Thousand ($12,000.00) Dollars, I direct that at the end thereof trustees pay to her the difference out of the corpus of my estate if she so requests.

9. This trust shall terminate on the date of the death of my mother, Mary Jane Little. On termination of this trust, I direct that all the estate and prop-

erties constituting it that are then in the hands of trustees shall pass and vest in fee simple and by trustees shall be conveyed

(a) one-half to Ann Armstrong Knight, if she then be living, and to her heirs per stirpes if she then be dead; and

(b) one-half to Marian Ralston Knight, if she then be living, and to her heirs per stirpes if she then be dead.

The trustees named in the will accepted the trust and allocated to the corpus of the trust so much of the income of the trust after operating expenses but prior to any deductions for depreciation and depletion as was equal to the amount of depreciation and depletion allowable for Federal income tax purposes with respect to such income.

Decedent, Mary Jane Little, proposed to institute proceedings to contest Gloria's will dated April 19, 1943, relying upon the validity of a prior will dated September 8, 1942. For the purpose of settling the threatened will contest a contract and agreement, dated September 20, 1944, was entered into by and between the interested parties. The contract and agreement provided, in part, as follows: (a) That the purpose of the "contract and agreement is to settle, adjust and compromise all matters in issue or controversy between any and all of the parties hereto;" (b) that the trustees named under Gloria's will (dated April 19, 1943) were to resign as trustees, and others were to be appointed; (c) a trust agreement was to be entered into by all beneficiaries under the will, with changes in the powers and duties of the new trustee, and with changes in the rights of the beneficiaries.

The trust agreement was executed by all the beneficiaries under date of November 14, 1944, and the old trustees resigned and were succeeded by the Mercantile National Bank at Dallas. Instead of the broad powers of disposition under the trust created by the will, the new trustee (with specified exceptions) could not encumber or dispose of properties constituting corpus of the trust without the consent of the beneficiaries. In place of the former broad powers of reinvestment, the trustee under the new trust agreement was limited to investments in United States Government bonds, unless consent to invest otherwise was given by the beneficiaries. As contrasted with the broad discretion to determine "what portion of receipts of the estate shall be allocated to corpus of the estate, and what portion of such receipts shall be allocated to income of the estate" granted to the trustees under the will, the new trustee under the trust agreement was "to make this allocation at all times in accordance with the provisions of law applicable at the time without regard to such discretion so granted by said will." After the death of Mary Jane Little, and providing that neither she nor her assignees, heirs, representatives, or any person claiming through her attacked the Gloria D. Foster will, then under the new trust agreement one-half of the then corpus of

the trust was to be distributed to Ann Armstrong Knight and Marian Knight Rowe in equal shares, or to their heirs per stirpes, and the other half of the then corpus of the trust was to be distributed to the heirs, representatives, legateees, or assigns of Mary Jane Little.

On September 30, 1947, a suit was brought in the District Court of Dallas County, Texas, by L. C. Webster, Sol Goodell, and T. A. Knight, as independent executors of the estate of Gloria D. Foster, deceased, against Mercantile National Bank at Dallas, as successor trustee of the estate of Gloria D. Foster, deceased; Mary Jane Little, deceased; Talbot Shelton and Wharton E. Weems, as owners of one-half of the remainder interest in the estate; J. R. Bower, Jr., Ann Knight Bower, Frederick E. Rowe, Jr., and Marian Knight Rowe, as owners of the other half of the remainder interest in the estate. In their petition plaintiffs alleged that during the course of their administration they, as executors, had received proceeds from the sale of oil and gas from properties of the estate up to December 1, 1946, at which date the Mercantile National Bank at Dallas commenced collecting such proceeds; that they, as executors, had allocated to the corpus of the estate amounts representing "cost" depletion on oil produced and sold, together with depreciation on facilities, equipment, furniture, fixtures, and the like, in accordance with practices employed by decedent, Gloria D. Foster, during her lifetime; that they, as executors, set forth such allocations of proceeds to corpus in their final account filed with the court, and they prayed that the court construe the will, particularly with reference to the meaning of the term "net income" as used therein, so as to approve their final account and to instruct them respecting the matter of what portion of funds in their hands represented net income and what portion was corpus and to discharge them from further liability and responsibility as executors.

In their answer the defendants, Ann Knight Bower, J. R. Bower, Jr., Marian Knight Rowe, and Frederick E. Rowe, Jr., interposed a cross action wherein they alleged that the issue of proper allocation of the proceeds of sale of oil and gas between income and corpus after December 1, 1946, by Mercantile National Bank at Dallas, trustee, was also in controversy as between themselves and Mary Jane Little and her assignees. The cross complainants requested declaratory relief to the effect that the Mercantile National Bank at Dallas, trustee, be ordered to compute and allocate to corpus depletion based on cost or 27½ per cent, whichever was greater, plus depreciation based on the methods used by decedent, Gloria D. Foster, during her lifetime. The court, by decision dated December 13, 1948, ordered, adjudged, and decreed that L. C. Webster, Sol Goodell, and T. A. Knight, as executors of the estate of Gloria D. Foster, deceased, had properly computed depletion and depreciation and al-

located correct and proper amounts to corpus for depletion and depreciation as shown by their final account. The court specifically found, in paragraph VIII of its decision, as follows:

In determining the "net income" of decedent's estate, defendant, Mercantile National Bank at Dallas, as Successor Trustee of the Estate of Gloria D. Foster, Deceased, in accordance with the law applicable to said estate at this time, and until otherwise directed by a court of competent jurisdiction, is authorized, required and directed to charge and set aside to corpus reserves for depreciation on oil and gas lease equipment and machinery, and depletion, in the following manner:

(a) *Depreciation:* A reserve for depreciation on the oil and gas lease equipment and machinery belonging to said estate, commencing December 27, 1946, to be computed in the same manner and according to the same formula as the decedent did during her lifetime and as plaintiffs have done as shown by their final account, which reserve for depreciation shall be deducted from the proceeds of sales of runs of oil and gas produced by said estate subsequent to December 1, 1946, and set aside to corpus.

(b) *Depletion:* Out of the proceeds of oil and gas runs produced and sold and to be produced and sold from each oil and gas lease subsequent to December 1, 1946, compute, charge and set aside to corpus 27½% of the gross proceeds of such sales of runs from each lease (but not to exceed 50% of the net income from such lease after deducting the expense and carrying charges on such lease, including depreciation, but not including depletion).

Consistent with its judgment the court decreed that of the $43,091.91 in custody of the executors, $42,379.96 represented corpus of the estate of Gloria D. Foster, deceased, and $711.95 was net income of said estate. The executors, having previously paid the former sum to Mercantile National Bank at Dallas, trustee, and the latter to Mary Jane Little, deceased, were discharged and acquitted of all other claims arising out of their administration. Mary Jane Little excepted to the judgment of December 13, 1948, in open court, and gave oral notice of appeal, but this appeal was not perfected by her and the judgment became final.

Sproles & Woodard, certified public accountants, were the accountants who kept the books and records of Gloria D. Foster and prepared her income tax returns. These same accountants continued to keep the books and prepare the income tax returns of the Gloria D. Foster estate and trust after her death during the entire period here involved. The books of Gloria D. Foster, while living, regularly and consistently made a charge against income and set up a reserve for depletion of oil and gas properties and a reserve for depreciation of oil and gas equipment in accordance with standard accounting principles. Subsequent to her death, the estate and trust have regularly and consistently set aside to corpus a reserve for depletion of oil and gas properties and a reserve for depreciation of oil and gas equipment. Depletion was computed on the basis of "cost" (which was the practice of Gloria D. Foster while living) by the executors and

trustees from August 1943 to December 1946, and thereafter the trust has used "percentage" depletion. Deductions for depletion and depreciation were claimed in the Federal income tax returns, throughout, consistent with the books of Gloria D. Foster, and, later, the books of her estate and trust.

In filing income tax returns for the Gloria D. Foster Trust, for the years here involved, the trustee computed and claimed as deductions the full amounts of allowable depletion and depreciation as follows:

| Year | Depletion claimed | Depreciation claimed |
|------|------------------|---------------------|
| 1949 | $47, 011. 47 | $2, 809. 01 |
| 1950 | 47, 348. 24 | 2, 552. 21 |
| 1951 | 52, 486. 87 | 3, 934. 42 |
| 1952 | 52, 478. 44 | 4, 205. 44 |

Mary Jane Little, deceased, in her income tax returns for the years here involved, claimed a share of the deductions for depletion and depreciation allowable in respect of income of the Gloria D. Foster Trust. This share was computed as follows:

### MARY JANE LITTLE—1949

*Fiduciary Income*

Gloria Foster Trust, Mercantile National Bank, Dallas, Texas

I. Net Income of Trust for 1949 per Spriles [*sic*] and Woodard_____ $92, 128. 02

Deducted in Determining Net Income:
Depletion_____ $47, 011. 49
Depreciation_____ 2, 809. 01
                                                         ————— 49, 820. 50

Net income before depletion & depreciation_____ 141, 948. 52
Distributed to Mary J. Little in 1949_____ 77, 601. 94
Additional Amount distributable_____ 10, 926. 08
                                                         —————
Total distributable to Mary J. Little 1949_____ $88, 528. 02 $88, 528. 02
                                                                       —————
Percentage of total distributable to Mary J. Little_____ 62. 3663%

II. *Allocation of Income and of Deductions for Depletion and Depreciation*

|  | Taxable net income before deductions | Deductions | Taxable net income |
|---|---|---|---|
| Mary Jane Little 62.3663%_____ | $88, 528. 02 | $31, 071. 20 | $57, 456. 82 |
| Other beneficiaries 2.5361%_____ | 3, 600. 00 | 1, 263. 50 | 2, 336. 50 |
| Trust 35.0976%_____ | 49, 820. 50 | 17, 485. 80 | 32, 334. 70 |
| | | | |
| Total 100%_____ | $141, 948. 52 | $49, 820. 50 | $92, 128. 02 |

III. Taxable to Mary Jane Little Before
Expense _____ $57, 456. 82
Less Legal Expense_____ 1, 602. 09
                                          —————
Net Taxable_____ **$55, 854. 73**

A similar computation was made for each of the years 1950, 1951, and 1952, except for differences in the percentage of total distributable to Mary J. Little, deceased, in each of those years.

The issue is whether Mary Jane Little, deceased, a life beneficiary under the trust created by the will of Gloria D. Foster, was entitled to a portion of the deductions for depreciation and depletion on oil and gas properties held as trust corpus during the years 1949, 1950, 1951, and 1952 or whether the trust itself was entitled to both deductions in their entirety. The specific claim of petitioner is that Mary Jane Little was entitled to 62 per cent of the allowable depletion and depreciation tax deductions, which 62 per cent was the proportion of the income from the trust she received out of the total trust income computed prior to deductions for depletion and depreciation reserves. The issue is controlled by two identical sentences appearing in sections 23 (1) and 23 (m) of the Internal Revenue Code of 1939 [1] providing that "[i]n the case of property held in trust the allowable deductions shall be apportioned between the income beneficiaries and the trustee in accordance with the pertinent provisions of the instrument creating the trust, or, in the absence of such provisions, on the basis of the trust income allocable to each."

Petitioner's basic contention here is that the "instrument creating the trust" was the will of Gloria D. Foster, and that since this will contained no provisions for the apportionment of charges for depletion or depreciation between the trustee and the income beneficiaries, it follows that such charges must be apportioned on the basis of the trust income allocable to each.

Respondent argues the "instrument creating the trust" was the Foster will as modified by the trust agreement of 1944 and the latter agreement by reference to allocation to corpus "in accordance with the provisions of the law applicable at the time" contains a directive as to the apportionment of depreciation and depletion between the trustee and the income beneficiaries which must be followed and this directive gives the trust both deductions in entirety.

It is not absolutely clear that petitioner would prevail if the Foster will, standing alone, be accepted as the "instrument creating the trust." However, we do not feel we need examine the trust of the Foster will to see if, properly construed, there is or is not the required apportionment provision.

The Foster will trust was modified by the trust agreement of 1944 and it is the Foster will trust as so modified in 1944 that is the "instrument creating the trust" under which petitioner received the income during all of the years (1949 to 1952, inclusive) that are before

---

[1] All section references are to the Internal Revenue Code of 1939, as amended, unless otherwise noted.

us. If there be found in the Foster will trust as modified by the trust agreement of 1944, provisions for apportionment of depreciation and depletion deductions, then under the plain command of sections 23 (1) and 23 (m), such provisions must be observed and the apportionment made "in accordance with the pertinent provisions of the instrument creating the trust."

The modification of 1944 made many changes in the Foster will trust but the one of interest here is that in paragraph 4, it removed the broad discretion of the trustee to allocate receipts to income and corpus and substituted a provision that the trustee "make this allocation at all times in accordance with the provisions of law applicable at the time without regard to such discretion so granted by said will."

The pertinent provisions of law applicable at this time were embodied in the Texas Trust Act. Acts 1943, 48 Leg., p. 232, ch. 148. This Act specifically provided for the rules to be followed, absent any specific provisions in the trust instrument, in the ascertainment of income and principal and in the apportionment of receipts and expenses between tenants and remaindermen. Section 27 of the Act provides that "[a]ll income after deduction of expenses properly chargeable to it, including reasonable reserves, shall be paid and delivered to the tenant." Section 33 of the Act dealing with the situation where the trust property consists of oil properties, such as were owned by the Gloria D. Foster trust, provides that in such a situation "[s]uch percentage * * * as is permitted to be deducted for depletion under the then existing laws of the United States of America for federal income tax purposes shall be treated as principal and invested or held for the use and benefit of the remainderman, and the balance shall be treated as income subject to be disbursed to the tenant or person entitled thereto."

The trust agreement of 1944, by reference to "the law applicable at the time," in paragraph 4, makes the foregoing statutory law of Texas a part of the agreement. It amounts to a provision of the trust instrument directing the apportionment of the allowable deductions between the income beneficiaries and the trustee, and the apportionment must be made in accordance with such provision. When we read the provisions of the foregoing statutory law of Texas into the trust agreement of 1944, it is clear that the trust is entitled to take the depreciation and depletion deductions in their entirety.

Our view that the settlement agreement and the new trust agreement in 1944 must be considered as an integral portion of the instruments creating the trust is reinforced by the decision of the District Court of Dallas County, Texas, in 1948. That court was called upon to approve a final accounting of the former trustees and also to decide the issue of the proper allocation to be made by the new

trustee as to allocation of the proceeds of the sale of gas and oil between income and corpus. In reaching its decision interpreting the rights of various beneficiaries under the trust, the court followed the Gloria D. Foster will as modified by the new trust agreement of 1944. In our findings of fact we have set forth a portion of the court's decree that decided the issue of the cross action between the life income beneficiary, Mary Jane Little, and the remaindermen and trustee, Mercantile National Bank, as to the allocation of trust receipts. There the court determined the "net income" must be determined "in accordance with the law applicable to said estate at this time" and it in effect stated the applicable law was a direction to the trustee to allocate all depreciation and depletion to the trust. Mary Jane Little did not appeal from this decision.

Petitioner seems to imply that if we look beyond the borders of the original will we will be violating the expressed intent of the testatrix. The argument is that if the testatrix "desired the trust instrument to have the effect for which respondent here contends, such effect could have been assured by a simple directive in the Will requiring the Trustees to set aside to corpus amounts equal to allowable depletion and depreciation. That she did not do so must be taken to mean that she did not intend to restrict the distribution of income to such an extent." However, if we were to look to the intent of the testatrix, we would arrive at a similar result. During her lifetime the books and records covering her oil operations show a regular and consistent charge against income, and a corresponding reserve for depletion of oil and gas properties and for depreciation of oil and gas equipment in accordance with standard accounting principles. This fact no doubt persuaded the Texas District Court to hold that when the testatrix in her will specified that the "net income" of the trust was to be paid to Mary Jane Little, the life beneficiary, she had in mind the trust receipts less the depletion and depreciation deductions.

*Decision will be entered for the respondent.*