John R. Upton and Anna L. S. Upton, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Margaret St. Aubyn, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 65966, 65967.   Filed April 30, 1959.

*Everett S. Layman, Esq.*, and *Kenneth S. Carey, Esq.*, for the petitioners.

*Aaron S. Resnik, Esq.*, and *Leslie T. Jones, Esq.*, for the respondent.

Arundell, *Judge:* In these consolidated proceedings, the respondent determined deficiencies in income tax for the taxable years ended December 31, 1952 and 1953, in amounts as follows:

| Petitioner | Docket No. | 1952 | 1953 |
|---|---|---|---|
| John R. Upton and Anna L. S. Upton | 65966 | $36,155.48 | $29,373.87 |
| Margaret St. Aubyn | 65967 | 42,047.43 | 38,516.12 |

Petitioners have assigned numerous errors, most of which have been disposed of by stipulations and, to the extent necessary, effect will be given thereto in the recomputations to be made under Rule 50. Only two issues remain for our determination. They are (1) whether the present life income beneficiaries (petitioners Anna and Margaret) of the William R. Sloan Trust are entitled to percentage depletion on the oil royalties paid and distributed to them in 1952 and 1953 by the surviving trustees of the trust, and (2) whether certain legal fees paid by the William R. Sloan Trust in 1949 and

1950 are deductible only in the years paid or ratably over a 20-year period.

### FINDINGS OF FACT.

Most of the facts were stipulated and they are so found.

Petitioners John R. Upton and Anna L. S. Upton are husband and wife, residing in San Francisco, California. They filed joint Federal income tax returns for the calendar years 1952 and 1953 with the director of internal revenue for the first district of California.

Petitioner Margaret St. Aubyn is an individual residing in San Francisco. She filed her individual Federal income tax returns for the calendar years 1952 and 1953 with the director of internal revenue for the first district of California.

All the petitioners computed their income for Federal tax purposes on the cash basis of accounting.

William R. Sloan, sometimes referred to herein as the decedent, died testate on April 14, 1923, at the age of 77. He left surviving him his widow, Agnes G. Sloan, then 58 years old, two daughters, Anna Logan Sloan (now Upton), then 20 years old, and Margaret Russell Sloan (now St. Aubyn), then 22 years old, and his wife's blind sister, Anna M. Kiernan, then 64 years old.

Decedent's will, which was duly probated, after making five specific bequests totaling $1,500, provided in parts as follows:

*FOURTH:* I give, devise and bequeath all the rest of my property and estate of every kind and nature whatsoever, both real and personal, unto my wife, Agnes G. Sloan, Mercantile Trust Company of San Francisco, a corporation, Ferdinand Eugene Blanchard and William McPherson, as Trustees, upon the following trusts and for the following uses and purposes, namely: My said Trustees shall receive the rents, issues, profits and income of said property, and after paying all necessary and proper expenses incurred by them in the administration of their trust shall dispose of the net rents, issues, profits and income of said property as follows:

(1) They shall pay out of said net rents, issues, profits and income the sum of Twenty-five Dollars ($25.00) a month to my sister-in-law, Anna M. Kiernan, during the full term of her natural life.

(2) They shall pay all the rest, remainder and residue of said net rents, issues, profits and income to my wife, Agnes G. Sloan, during the full term of her natural life.

(3) If both of my said daughters shall survive my wife and my sister-in-law, Anna M. Kiernan, I direct that all the rents, issues, profits and income from said property and estate held in trust shall from and after the death of my said wife and my sister-in-law, Anna M. Kiernan, be paid to my said two daughters in equal shares by my said Trustees. * * *

   *       *       *       *       *       *       *

(10) I authorize and empower the Trustees of any and all trusts created in this Will, and such survivors of them as shall from time to time constitute the Trustees of the trusts created herein, to sell all or any property of the trust estate * * * also to invest and reinvest the proceeds of sales of property

or to purchase or acquire other property, all property so acquired with the proceeds of property devised or bequeathed in trust to be held upon the same uses and trusts as are in this Will created and declared with respect to the property so devised and bequeathed; also to lease property, * * * and to execute any and all instruments and conveyances which may be necessary or proper in the performance of the duties or in the execution of the powers herein imposed or conferred upon them.

The will also provided for many combinations of contingencies regarding the death of either or both daughters, with or without issue, before or after the death of their mother, and under certain contingencies, the trust property would go in equal shares to five named charities.

McPherson, one of the trustees, died March 9, 1934; Anna M. Kiernan died on or about January 14, 1936; and the decedent's widow died December 26, 1945. The name of Mercantile Trust Company, the corporate trustee, was changed to American Trust Company. Issue was born to each of the two daughters of the decedent and the issue and the two daughters are now living.

The estate of the decedent was distributed on or about September 29, 1924, by the "Decree of Settlement of First and Final Account and of Final Distribution in the Superior Court of the State of California in and for the County of Alameda." This decree is sometimes referred to herein as the decree of final distribution, and the court is sometimes referred to herein as the California court. Certain assets of the estate, including 107 shares of the stock in the Pleasant Valley Farming Company, appraised at $32,100, were distributed to the trustees of the trust named in paragraph Fourth of decedent's will, and sometimes referred to herein as the William R. Sloan Trust.

The decedent at the time of his death owned all the mineral rights in certain lands in the Cuyama Valley area of San Luis Obispo County, California, together with the right of extraction, ingress and egress, but not the fee. These mineral interests were not described or referred to in the inventory or in the decree of final distribution but were distributed to the trustees by the so-called omnibus clause of the decree of final distribution. These mineral rights are sometimes hereinafter referred to as "Sloan-Cuyama-Richfield mineral interests." The fair market value of the oil, gas, and other hydrocarbons in the Sloan-Cuyama-Richfield mineral interests on April 14, 1923, the date of decedent's death, was $5,445.25.

The decedent's two daughters, hereinafter sometimes referred to as Anna and Margaret, respectively, survived both their mother and their aunt, Anna M. Kiernan, and are the present income beneficiaries of the trust of their deceased father.

On or about April 23, 1943, the Pleasant Valley Farming Company distributed to its shareholders economic interests in oil and gas in

place. The William R. Sloan Trust, as owner of 107 shares of stock in the Pleasant Valley Farming Company, received a distribution of such economic interests.

On the date of distribution, the fair market value of the economic interests in oil and gas in place received by the William R. Sloan trust was $46,101.08. This sum is allocated among the various interests as follows:

Interest in lands leased to the Standard Oil Company of California:

| | |
|---|---:|
| Producing lands | $19,289.88 |
| Nonproducing lands later quitclaimed | 14,645.07 |
| Interest in lands leased to Shell Oil Company and later quitclaimed | 1,486.34 |
| Interest in lands included in a producing unit | 779.55 |
| Interest in lands not leased | 9,900.24 |
| Total | 46,101.08 |

Since the date of the distribution of the Pleasant Valley economic interests, the trustees have received royalties from the Standard Oil Company of California with respect to oil produced from or attributed to such economic interests. Such royalties are hereinafter sometimes called the "Pleasant Valley royalties." The royalties received from the date of such distribution to and including October 31, 1951, totaled $123,605.03. The expenses charged against these royalties totaled $2,597.59. The net royalties of $121,007.44 were distributed to decedent's widow until December 26, 1945, the date of her death, and thereafter, to her two daughters, Anna and Margaret. Depletion in an aggregate of $33,991.39 (27½ per cent of $123,605.03) was claimed as a deduction by the distributees on the royalties each received. No depletion was claimed by the William R. Sloan Trust prior to November 1, 1951.

Subsequent to October 31, 1951, the Pleasant Valley royalties received by the trustees from the Standard Oil Company of California, the expenses chargeable against the royalties, the net royalties before depletion, the depletion, and the net royalties after depletion, were as follows:

| Period | Gross | Expenses | Net before depletion | Depletion | Net after depletion |
|---|---:|---:|---:|---:|---:|
| Nov. and Dec. 1951 | $2,554.97 | $18.42 | $2,536.55 | $702.62 | $1,833.93 |
| 1952 | 12,706.84 | 414.51 | 12,292.33 | 3,494.38 | 8,797.95 |
| 1953 | 10,122.53 | 421.88 | 9,700.65 | 2,783.70 | 6,916.95 |

For the 2-month period in 1951, depletion was taken by the trustees. For the period subsequent to December 31, 1951, depletion was taken by the income beneficiaries (Anna and Margaret).

Early in 1948 oil was discovered in the Cuyama Valley area in a well situated within 150 feet of one of the parcels in which the William

R. Sloan Trust owned the mineral interest. About June 19, 1948, the trustees as "Owners" entered into a written agreement with the Richfield Oil Company as "operator" for the development of oil and gas from the mineral interests owned by the trust in the Cuyama Valley area. The trustees were paid a bonus of $1,000 and were to receive a royalty of 40 per cent of all oil, gas, and other hydrocarbons produced from the real property covered by the agreement. By an amendment to the agreement, the royalty was increased to 50 per cent. The royalties received pursuant to the Richfield agreement and amendment are hereinafter sometimes called the "Richfield royalties." All Richfield royalties received prior to June 1, 1952, were distributed one-half to Anna and one-half to Margaret, except for the calendar year 1951. In that year (1951) the gross Richfield royalties were $507,581.45, $479,656.67 of which was distributed to Anna and Margaret and $27,924.78 was retained by the trust.

Paragraph 35 of the June 19, 1948, Richfield agreement provided in part:

> Owners execute this agreement as Trustees pursuant to the powers contained in the Decree of Final Distribution * * *. Owners with reasonable diligence will take such proceedings in a court of competent jurisdiction as in their opinion may be required to effect a construction, interpretation or modification of the terms and provisions of said decree of distribution in order that a determination of the power, right and authority of Owners to make and enter into this agreement might be determined.

In connection with such judicial proceedings, it was necessary to procure a guardian *ad litem* to represent the interests of minor and unborn remaindermen. The Oakland Bank of Commerce was ultimately appointed guardian *ad litem* for the minor and unborn remaindermen. Gerald Hagar became attorney for the guardian. Hagar raised the question whether some or all of the royalty income should be retained by the trustees until the termination of the trust.

The trustees filed with the California court the nineteenth report and account of their management of the trust estate, which covered the period from October 31, 1951, to July 31, 1952, and asked the court for instructions as to the trustees' authority to execute the Richfield agreement and as to the distributability of the royalties then being received, whether under the Richfield agreement or from the Pleasant Valley economic interests.

Anna and Margaret filed an answer to the nineteenth report and account of the surviving trustees, pleading in effect that the trustees had the power and authority to make the Richfield agreement; that section 2272 of the California Civil Code was applicable to the trust and that all of the oil royalties were income and were currently distributable to themselves as present income beneficiaries of the trust.

The Oakland Bank of Commerce on behalf of the minor and unborn remaindermen, filed objections to the nineteenth report and account which in effect pleaded that all royalties were to be retained by the trustees and that only the income from the reinvestment of such royalties should be distributed to the present income beneficiaries.

The hearing on the nineteenth report and account took place on four different court days. Evidence was offered and the matter was briefed by the respective counsel for the trustees, the income beneficiaries, and the minor and unborn remaindermen.

The proceeding in the California court was adversary in nature and was fully and fairly argued to the court.

On or about May 19, 1953, the California court duly made and entered its "Decree of Advice and Instructions to Surviving Trustees and of Settlement of Nineteenth Account and Report of Surviving Trustees," hereinafter sometimes referred to as the decree of May 19, 1953. The trustees were instructed to allocate 72½ per cent of the royalty income equally to Anna and Margaret, the income beneficiaries of the trust, and to allocate 27½ per cent of the royalty income to the trustees.

The 27½ per cent of the royalties (both Pleasant Valley and Richfield) allocated to the trustees under the decree of May 19, 1953, were referred to in the decree as "retained royalties." Paragraphs 14 and 15 of the decree provided:

all retained royalties shall be invested and reinvested, but the income from such investments or reinvestments of the retained royalties shall from time to time hereafter be currently distributed and paid to said present beneficiaries share and share alike; * * *

Paragraph 16 of the May 19, 1953, decree provided: "That after and including November 1, 1951, there will be two additional accounts, namely, the retained royalties account and the income from retained royalties account."

Paragraphs 10 and 11 of the decree referred to the Richfield agreement of June 19, 1948, and stated that the trustees "do and did have the power and authority" to execute the various leases or other agreements "for the exploration for, and the production and sale of, oil, gas and other hydrocarbons in, under or from the trust properties, *provided that the royalty income produced be reasonably apportioned or allocated between the present income beneficiaries and the trustees as hereinafter in this decree provided.*" (Emphasis supplied.)

No appeal was taken from the decree of May 19, 1953, and no motion for a new trial or other motion to reopen the same has been made. The decree is a final and conclusive adjudication of property rights.

Pursuant to the decree of May 19, 1953, the trustees, during the taxable years here involved, have distributed to Anna and Margaret

72½ per cent of all gross royalties received by the trust and have retained in the trust 27½ per cent of all such gross royalties as follows:

| Gross royalties | 1952 | 1953 |
|---|---|---|
| Richfield | $479,630.02 | $383,534.94 |
| Pleasant Valley | 12,706.84 | 10,122.53 |
| Total gross royalties | 492,336.86 | 393,657.47 |
| 72½ per cent to Anna and Margaret | 356,944.22 | 285,401.67 |
| 27½ per cent to trustees | 135,392.64 | 108,255.80 |

Subsequent to the decree of May 19, 1953, the trustees presented to the same court their twenty-first and twenty-second accounts and reports for the calendar years 1952 and 1953, in which the trustees showed the "distribution of depletion" as follows:

| Distribution of depletion | 1952 | 1953 |
|---|---|---|
| To Anna and Margaret | $98,159.66 | $78,485.46 |
| To the trustees | 37,232.98 | 29,770.34 |
| Total | 135,392.64 | 108,255.80 |

The twenty-first and twenty-second accounts and reports were approved by the California court on December 29, 1953, and December 29, 1954, respectively.

The above-mentioned "distribution of depletion" was reflected in the Federal fiduciary income tax returns filed for the years 1952 and 1953 by the William R. Sloan Trust, in the joint returns filed for the years 1952 and 1953 by Anna and her husband, and in the separate returns filed for the years 1952 and 1953 by Margaret.

The respondent determined that all of the depletion in the amount of $135,392.64 for 1952 and in the amount of $108,255.80 for 1953 should have been deducted by the William R. Sloan Trust and that the petitioners herein were not entitled to any deduction for depletion. In Exhibit A attached to the deficiency notices addressed to petitioners, the respondent explained his determination for 1952 as follows:

Depletion deduction in the amount of $98,159.66 which was used as a reducing factor in determining the distributive income of the trust has been disallowed as such a factor, because under the provisions of section 23(m) of the Internal Revenue Code of 1939, if the trustees in determining the distributable income are to make due allowance for keeping the trust corpus intact by retaining a reasonable amount of the current income for that purpose, the allowable depletion deduction can be taken solely by the trustees.

Identical explanations *mutatis mutandis* were made in Exhibit B attached to the deficiency notices addressed to petitioners for the year 1953.

The will of William R. Sloan, as interpreted by the California court in the decree of May 19, 1953, in essence provided for the setting aside of a part of the income flowing from oil and gas royalties for the

purpose of protecting the interests of the remaindermen and for the purpose of keeping the corpus intact.

The California court, in its decree of May 19, 1953, in effect found that 27½ per cent of the receipts from the oil royalties should be retained by the trustees for the purpose of preserving the corpus.

The trustees of the trust under the Sloan will were required by the terms of the trust, as construed by the California court, to retain 27½ per cent of royalty income for purposes of establishing a depletion reserve to protect the remaindermen.

During the year 1949 Everett S. Layman, as attorney for the William R. Sloan Trust, was paid the sum of $2,250 for services rendered in 1948 in drawing the Richfield agreement. During the year 1950 Layman was paid the sum of $3,000 for services rendered during that year in redrafting a unit agreement. The fees were reasonable in amount. These agreements had a term of 20 years.

The trustees in the Federal fiduciary income tax returns for 1952 and 1953 deducted from income in each return one-twentieth of the sum of $2,250 and $3,000, or $262.50, and allocated a part of such deductions to the income beneficiaries. The respondent disallowed such deductions and explained his disallowance as follows:

Deduction of legal expenses in the amount of $262.50 which was based on a 20-year amortization of legal fees incurred in connection with negotiation of an oil and gas lease, has been disallowed because such legal expenses are recoverable through depletion.

OPINION.

The statute under which the first issue must be decided is section 23(m) of the Internal Revenue Code of 1939, the pertinent part of which is as follows:

SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\*       \*       \*       \*       \*       \*       \*

(m) DEPLETION.—* * * In the case of property held in trust the allowable deduction shall be apportioned between the income beneficiaries and the trustee in accordance with the pertinent provisions of the instrument creating the trust, or, in the absence of such provisions, on the basis of the trust income allocable to each.

The parties agree that "the allowable deduction" for 1952 is $135,392.64 and for 1953 it is the amount of $108,255.80. They disagree on how the allowable deductions are to be "apportioned." The respondent determined and contends that in accordance with the "pertinent provisions of the instrument creating the trust" all of the deductions are to be apportioned to the trust. Petitioners contend that neither the will of the decedent, the decree of final distribution, nor the decree of May 19, 1953, make any provision for the apportionment of the depletion allowances and, in accordance with the statute,

"in the absence of such provisions" the allowable deduction "shall be apportioned * * * on the basis of the trust income allocable to each." They further contend that the California court in its decree of May 19, 1953, merely allocated the income of the trust consisting principally of the Richfield and Pleasant Valley royalties between the trust and the income beneficiaries on the basis of 27½ per cent to the trust and 72½ per cent to the income beneficiaries, and that this allocation of income by the California court affords the "basis" upon which the allowable deductions for depletion shall be apportioned.

The respondent relies primarily upon that part of the applicable regulations [1] which provide that "if the instrument provides that the trustee in determining the distributable income shall first make due allowance for keeping the trust corpus intact by retaining a reasonable amount of the current income for that purpose, the allowable deduction will be granted in full to the trustee."

We think the respondent's determination of this issue must be sustained on the basis of that part of Regulations 118 primarily relied upon by him. This regulation has been in force for more than 30 years without change, and without any change in the statute, and may be said to have the force and effect of law. *Helvering* v. *Reynolds Co.*, 306 U.S. 110; *Crane* v. *Commissioner*, 331 U.S. 1.[2] Here,

---

[1] The applicable regulations are Regulations 118, section 39.23(1)–1 relating to depreciation and section 39.23(m)–1(c) relating to depletion. The latter section provides in part: "The principles governing the apportionment of depreciation in the case of property held * * * in trust are also applicable to depletion." Section 39.23(1)–1 provides in part:

Sec. 39.23(1)–1 *Depreciation.* * * * In the case of property held in trust, the allowable deduction is to be apportioned between the income beneficiaries and the trustee in accordance with the pertinent provisions of the will, deed, or other instrument creating the trust, or, in the absence of such provisions, on the basis of the trust income which is allocable to the trustee and the beneficiaries, respectively. *For example,* if the trust instrument provides that the income of the trust computed without regard to depreciation shall be distributed to a named beneficiary, such beneficiary will be entitled to the depreciation allowance to the exclusion of the trustee, *while if the instrument provides that the trustee in determining the distributable income shall first make due allowance for keeping the trust corpus intact by retaining a reasonable amount of the current income for that purpose, the allowable deduction will be granted in full to the trustee.* * * * [Emphasis supplied.]

The above "example" mentioned in the regulations first appeared in Amendment No. 30 of the conference report in connection with the enactment of the Revenue Act of 1928, Pub. L. No. 562, 70th Cong., H.R. 1. See *Sue Carol*, 30 B.T.A. 443, 447. All regulations dealing with depreciation in the case of property held in trust from 1928 (art. 201 of Regs. 74) through the above section 39.23(1)–1 of Regulations 118, contain the same language.

[2] Cf. *Spalding Trust*, 34 B.T.A. 762, 765, wherein, after quoting the example given in article 201 of Regulations 74, which is identically the same as the example given in section 39.23(1)–1 of Regulations 118, we said:

"That the quoted regulation embodies a correct construction of the statute is not questioned by either party to this proceeding. The controversy concerns the proper interpretation of the trust instrument, that is to say, whether the trust instrument requires the trustee to distribute the ordinary income computed without regard to depreciation, or whether it contemplates that the trustee shall first make due allowance for keeping the trust corpus intact by retaining a reasonable amount of the current income for that purpose."

the instrument creating the trust is the decedent's will as interpreted by the decree of May 19, 1953. Prior to the filing of that decree, the California court had before it the income beneficiaries contending that all of the royalties were income currently distributable to them under the will, the guardian *ad litem* contending that all of the royalties should be retained by the trustees, and the trustees themselves asking for instructions as to the distributability of the royalties then being received. After an extended hearing and briefs filed by all parties, the court in its decree of May 19, 1953, held that such royalties should be "reasonably apportioned or allocated between the present income beneficiaries and the trustees" on the basis of 72½ per cent to the former and 27½ per cent to the latter. In so doing the court noted that after oil and gas had been discovered on properties adjacent to the Sloan-Cuyama-Richfield mineral interests, oil, gas, and other hydrocarbons were being drained from the properties held by the trust and that "the Trust Estate, the income beneficiaries and all the remaindermen, whether vested or contingent, were being substantially damaged by reason of such drainage" and that *"in order to protect the trust estate and the interests of the income beneficiaries thereof and of all remaindermen * * * it was necessary to negotiate and enter into"* the agreements for lease and development of the trust properties, and that by so doing, the trust, the income beneficiaries, and the remaindermen were all protected *"provided this Court apportions or allocates some of the royalty income therefrom for retention by the trustees as hereinafter in this decree provided."* (Emphasis supplied.) Later in the decree the court provided:

All such royalties shall be allocated and apportioned as follows: 72½% of such gross royalties * * * shall be apportioned and allocated to the present income beneficiaries * * * and 27½% of such royalties * * * shall be allocated and apportioned to the surviving trustees or their survivor, to be retained by them or it * * *; all retained royalties shall be invested and reinvested, but the income from such investments * * * shall * * * be currently distributed and paid to said present beneficiaries * * *

We think the court in so construing the decedent's will, and the trust created under it, in effect construed these instruments as requiring the trustees, in determining the distributable income, first to make due allowance for keeping the trust corpus intact by retaining a reasonable amount of the current income for that purpose and that this would be accomplished by the trustees' retaining 27½ per cent of all royalties received. It should be borne in mind that the instant trust was mandatory in terms in that all of the income was distributable to Anna and Margaret and when the court directed that 27½ per cent of the income be retained by the trustee it was necessarily acting for the protection of the remaindermen and to preserve the corpus. *William Fleming, Trustee,* 43 B.T.A. 229 (Issue No. 2), affd. 121 F. 2d 7 (C.A.

5), relied on by petitioners, was a discretionary trust and the income was distributed as the trustee saw fit with the depletion following the allocation of income and is therefore not in point. It follows that under section 39.23(1)–1 of Regulations 118 the allowable deductions for depletion should be granted in full to the trustees and that no part thereof is allowable to the income beneficiaries. See *Estate of Mary Jane Little*, 30 T.C. 936, on appeal (C.A. 9), wherein we reached a like result. We sustain the respondent's determination on this issue.

The facts as to the second issue are set out in our findings. Petitioners contend that the fees paid Layman in 1949 and 1950 are either deductible in the year paid or over a 20-year period. This issue is decided against petitioners on the authority of our prior holdings in *L. S. Munger*, 14 T.C. 1236, and *Dorothy Cockburn*, 16 T.C. 775.

*Decisions will be entered under Rule 50.*