John R. UPTON, Anna L. S. Upton and Margaret St. Aubyn, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 16703.

United States Court of Appeals Ninth Circuit.

Sept. 27, 1960.

As Amended on Denial of Petition for Rehearing Dec. 19, 1960.

Everett S. Layman, Sr., Kenneth S. Carey, Everett S. Layman, Jr., Arthur J. Lempert, San Francisco, Cal., for petitioners.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Helen A. Buckley, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before CHAMBERS and HAMLEY, Circuit Judges, and FOLEY, District Judge.

HAMLEY, Circuit Judge.

The named petitioners seek reversal of two decisions of the Tax Court rendered in consolidated proceedings to redetermine tax deficiencies and reported in 32 T.C. 301. The principal question presented here relates to the apportionment of percentage depletion allowances as between the life beneficiaries and the trustees of a testamentary trust in computing federal income taxes on oil well royalties.

The testator, William R. Sloan, died on April 14, 1923, leaving his widow, Agnes G. Sloan, and two daughters, Anna L. Sloan (now Upton) and Margaret R. Sloan (now St. Aubyn). The two daughters, Anna and Margaret, and Anna's husband with whom she filed joint returns are the petitioners here.

Most of Sloan's estate was distributed to trustees named in his will. They were directed to receive the rents, issues, profits and income of the property and to dispose of the same as provided in the will after paying necessary and proper expenses. Sloan's sister-in-law, Anna M. Kiernan, was to receive twenty-five dollars a month as long as she lived, and the widow was to receive the rest of the net income as long as she lived. Upon the death of the widow and her sister all of such net income would go to the daughters, if then living, in equal shares.

Provision was made for the termination of the trust as to one-half of the corpus if and when either daughter died leaving issue. This share of the corpus would then go to the living issue of the deceased daughter in equal shares. In the event of the death of a daughter leaving no issue no part of the trust would terminate, but the surviving daughter would be the sole income beneficiary. Upon the death of the surviving daughter the entire trust would terminate. If the surviving daughter left living issue they would receive the corpus in equal shares. If there were no living issue the corpus would go to five named charities.

The trustees had no power under the will to distribute anything to the life beneficiaries except "rents, issues, profits and income," after deducting therefrom necessary expenses of administration. The trustees were given power to sell trust property. However, they were required in that event to invest and reinvest the proceeds, or to purchase or acquire other property, all of which was to be held upon the same uses and trusts as the original trust property.

Anna M. Kiernan died on January 14, 1936, and Agnes G. Sloan died on December 26, 1945. Since the latter date the two daughters have been entitled to all of the net income of the trust. Children were born to each of the daughters, and these children are now living.

Among the assets which were distributed to the trustees were 107 shares of the stock in Pleasant Valley Farming Company, then appraised at $32,100. About nineteen years later, on April 23, 1943, this company distributed to its shareholders economic interests in oil and gas in place. The fair market value of the economic interests so distributed to the trustees at this time was $46,101.08. Among these economic interests was an interest in oil-producing lands leased to the Standard Oil Company of California. Between 1943 and October 31, 1951, net royalties received by the trustees from these interests aggregated $121,007.44.

Until the death of the widow on December 26, 1945, all such royalties were distributed to her. Thereafter the net royalties were distributed to Anna and Margaret. Depletion in an aggregate of $33,991.39 (27½% of $123,605.03, the gross royalties) was claimed as a deduction by the distributees, the mother and daughters, in computing their respective federal income taxes for the years 1943 to October 31, 1951. No depletion was claimed by the trust prior to November 1, 1951.

Beginning on that date the trustees, for the reasons stated below, retained 27½% of the Pleasant Valley royalties and took a 27½% depletion allowance on the royalties so retained. In November and December 1951 the sisters took no

depletion allowance on the 72½% of Pleasant Valley royalties which were distributed to them beginning on that date. Beginning on January 1, 1952, however, they did take a 27½% depletion allowance on royalties thereafter received.

Among the other assets which were distributed to the trustees were the mineral rights in certain lands in Cuyama Valley, San Luis Obispo County, California. These mineral interests were not separately described or referred to in the inventory or decree of final distribution, and were distributed to the trustees by the so-called omnibus clause of that decree. The fair market value on April 14, 1923, of the oil, gas and other hydrocarbons covered by these mineral interests was $5,445.25.

Early in 1948 oil was discovered in the Cuyama Valley. About June 19 of that year the trustees entered into a written agreement with Richfield Oil Company for the development of oil and gas from the mineral interests held by the trust in this valley. A provision in this agreement required the trustees to obtain a court determination of their right to enter into the agreement. For the purpose of obtaining such a determination the trustees instituted a declaratory judgment suit in the Superior Court of the State of California in and for the County of Alameda.

At the outset of this action a question arose as to whether the royalties should be retained by the trustees and only the income thereof be distributed to the sisters. Since this question could not be determined in the declaratory judgment action, that suit was abandoned. The trustees then filed their 19th report and account in the trust proceeding before the Alameda County Superior Court and asked for instructions as to the authority to enter into the Richfield agreement. They also asked for instructions as to the distribution of the royalties under both the Richfield agreement and the Standard Oil lease.

In the petition for instructions the trustees took the position that all of the royalties should be distributed to Anna and Margaret, and that none should be retained by the trustees. In an answer filed by the sisters the same position was taken. In objections filed by the guardian ad litem for living and unborn remaindermen, however, the position was taken that all the royalties should be retained by the trustees and only the income thereof distributed.

After a hearing which extended over four days a decree was entered on May 19, 1953, confirming the authority of the trustees to enter into the Richfield agreement.[1] The trustees were instructed to allocate 72½% of the royalty income from the Richfield agreement and the Standard Oil lease to the sisters and to allocate the balance to the trustees. The 27½% of the royalties thus allocated to the trustees was referred to in the decree as "retained royalties."

It was further provided that all such retained royalties should be invested and reinvested, the income therefrom to be currently distributed to the income beneficiaries in equal shares. For purposes of distribution of the corpus of the trust upon termination of all or a part of the trust it was ordered that retained royalties "be treated in all respects as if it were part of the property distributed to the trustees by said decree of final distribution * * *." The trustees were directed to establish two additional accounts, namely, the retained royalties ac-

---

1. In this connection it is recited in the decree:

"28. The surviving trustees do, and did, have the power and authority to execute the Richfield agreement and any other lease or other agreement for the exploration for, and the production and sale of, oil, gas and other hydrocarbons in, under or from the trust properties above described, even though such prop- erties are in the nature of wasting assets, provided that the royalty income produced from the mineral rights subject to the Richfield agreement as amended or from the interests subject to such other lease or other agreement be reasonably apportioned or allocated between the present income beneficiaries and the trustees as hereinafter in this decree provided * * *."

count and the income from retained royalties account.[2]

In computing net income in their fiduciary income tax returns for 1952 and 1953 the trustees deducted 27½% of the royalties which they had retained as depletion allowance authorized by section 114(b) (3) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 114(b) (3). Likewise and for the same reason, in computing net income in their personal income tax returns for those years petitioners deducted 27½% of the royalties which had been distributed to them. The Alameda County court was advised of this in the 21st and 22nd accounts and reports filed by the trustees for the calendar years 1952 and 1953. These accounts and reports were approved by that court.

Upon examination of the tax returns filed for those years the Commissioner of Internal Revenue determined that the income beneficiaries were not entitled to take credit for any depletion allowance on such distributed royalties, and that the trustees should have taken credit for all of it. Readjusting the returns to reflect this determination, the Commissioner notified the Uptons that their income tax payments were deficient in the amount of $36,155.48 for 1952, and $29,373.87 for 1953. Likewise, Mrs. St. Aubyn was notified that her income tax payments were deficient in the amount of $42,047.43 for 1952, and $38,516.12 for 1953.

Adherence to this determination by the Tax Court led to the filing of the petition for review now before us. In the meantime, and as a protective measure pending the outcome of this litigation, the trustees have filed claims for refund for 1952 and 1953.

The apportionment of the depletion allowance as between the income benefi-

ciaries and the trustees of a trust is governed in this case by section 23(m) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23(m). The applicable part of this section reads as follows:

"* * * In the case of property held in trust the allowable deduction shall be apportioned between the income beneficiaries and the trustee in accordance with the pertinent provisions of the instrument creating the trust, or, in the absence of such provisions, on the basis of the trust income allocable to each."

Petitioners take the position that there are no pertinent provisions of the trust instrument which apportion depletion allowance between the income beneficiaries and the trustees. Therefore, it is argued, the last clause of section 23(m), which governs when there are no such pertinent provisions, must be given effect. It is asserted that this is what they and the trustees did, since they apportioned depletion allowances between themselves on the same basis as the court in its decree of May 19, 1953, had allocated royalties.

The Commissioner, on the other hand, takes the position that there are pertinent provisions in the trust instrument whereby all depletion allowances were granted to the trustees. Proceeding on this premise, the Commissioner reasons that there is no occasion for applying the last clause of section 23(m) which governs only when there are no such pertinent provisions. The Tax Court is in full accord with this view.

Petitioners and the Commissioner are in agreement that the "instrument creating the trust," as those words are used in section 23(m), is the will of William R. Sloan. They are also agreed that there is no provision in that will which in express terms grants all depletion al-

---

2. No motion for a new trial was made and no appeal was taken from the decree of May 19, 1953. Gross royalties in the amount of $492,336.86 were received in 1952. The trustees distributed 72½% of this sum, or $356,944.22 to the sisters in equal shares. The trustees retained the remaining 27½%, or $135,392.64, as provided in the decree. On the same basis royalties in the amount of $285,401.67 were distributed in 1953, and the remaining $108,255.80 for that year was retained by the trustees.

lowances to the trustees or apportions them between the income beneficiaries and the trustees. The will does not use the word "depletion" and does not expressly provide for the apportionment or allocation of anything for income tax purposes.

■ There is nothing in section 23 (m), however, to indicate that an apportionment of depletion allowances as therein referred to must be stated in express terms. As in the case of any other term or condition of a trust instrument, if the intention of the trustor can be determined from an examination of the pertinent provisions of the instrument that intention will be given effect whether or not stated in express terms. See Commissioner of Internal Revenue v. Netcher, 7 Cir., 143 F.2d 484, where a similar statutory provision relating to depreciation rather than depletion was under consideration.

It is this principle which the Commissioner relied upon in giving notice of the deficiencies, and which he now relies upon in defending the Tax Court's decisions. In substance the Commissioner argues that (1) the will provides that the trustees in determining the distributable royalties shall first make due allowance for keeping the trust property intact by retaining a reasonable amount of the royalties for that purpose; and (2) when a will contains such a provision this evidences an intention on the part of the testator that the depletion allowances be not apportioned between income beneficiaries and trustees, but that they be granted in full to the trustees. The petitioners take issue with both of these contentions.

■ With regard to the first of these contentions, we think that the will required the trustees to preserve the corpus. This necessarily follows from the

fact that the only things they were authorized to distribute were "rents, issues, profits and income." But whether the testator intended to include all oil well royalties under "income," as that term is used in the will, or intended to consider part of such royalties as corpus is another question.

As we see it, however, this latter question has been settled by the state court decree of May 19, 1953. The petition for advice and instructions filed by the trustees in that proceeding framed the question as follows:

"* * * whether such royalties are income to be distributed to the life beneficiaries of the respective trusts or whether all or some part of such royalties are a return of capital and should in whole or in part be held as part of the principal of the trust, and if so, the extent to which they are income and to which they are principal."

The trustees took the position in that petition that the royalties were income to be distributed currently to the life beneficiaries and that no part thereof was principal. Anna and Margaret, the life beneficiaries, in their responsive pleading made the same answer to the same question.[3] The guardian ad litem for the remaindermen in their objection to the 19th account and report contended that all of the royalties were principal of the trust and were not to be distributed currently as income to the life beneficiaries. All parties were in agreement that the answer to the question required the court to ascertain the intention of the testator.

The Alameda County court answered this question in its decree of May 19, 1953, by instructing the trustees to allocate 72½% of the royalties to Anna

3. At the outset of the hearing counsel for the life beneficiaries, who are the petitioners here, stated the question in these words:
    "The question has been raised whether such royalties are income to be distributed to the life beneficiaries of the respective trusts or whether all or some part of such royalties are a return of capital and should in whole or in part be held as part of the principal of the trust, and if so, the extent to which they are income and to which they are principal."

and Margaret, and to allocate 27½% to themselves as "retained royalties."

In the decree no reasons are stated for directing this allocation, and the royalties to be retained by the trustees are nowhere referred to as return of capital. The conclusion is nevertheless inescapable that the trustees were ordered to retain the 27½% on the theory that the testator intended this portion of the royalties to represent return of capital.

This is the only basis on which the court was asked to require such a retention. Petitioners do not suggest any other theory on which the court could have ordered a retention of royalties, since the will required that all net income be distributed to the life beneficiaries. It is also significant that the decree of the Alameda County court contains no provision for the retention of any trust income except for part of the oil well royalties.

There are other circumstances which lead to the same conclusion. In its decree the state court referred to the royalties as derived from "wasting assets" and therefore conditioned the authority of the trustees to enter into the agreement with Richfield upon retention of part of those royalties. The decree requires that the income from retained royalties be currently distributed to the life beneficiaries as in the case of income from any other asset of the trust. The decree also provides that upon termination of the trust retained royalties and investments derived therefrom be distributed as corpus of the trust. Moreover, the percentage of royalties ordered to be retained conforms exactly with the percentage depletion allowance available under section 114(b) (3), which allowance itself is designed to preserve the value of a wasting asset.

It is true that in subsequent annual accounts and reports depletion allowance was apportioned between the life beneficiaries, and this allocation was approved by the state court. From this petitioners argue that the state court has construed its decree of May 19, 1953, as effectuating only an allocation of "income" as that term is used in the will.

In these subsequent proceedings, however, the only issue was the approval of the trustees' account. Since the proceedings were nonadversary in character and no issue was drawn as to the terms of the prior decree, the order of approval cannot be regarded as constituting adjudications of the meaning of the 1953 decree. Apart from this, these subsequent decrees, whether or not adversary in character, could have no significance here since the distribution of depletion allowance is to be determined by the federal criterion provided by section 23(m). As to the application of a federal criterion in a particular case the Tax Court is not bound by state court decisions. See Gallagher v. Smith, 3 Cir., 223 F.2d 218, 222.

It is therefore our conclusion that the will provides that the trustees in determining the distributable royalties shall first make due allowance for keeping the trust property intact by retaining a reasonable amount of the royalties for that purpose. The state court has fixed this amount at 27½%.

This brings us to the second contention on which the Commissioner's case is based. As stated above, this contention is that when a will contains a provision requiring the trustees to conserve corpus this evidences an intention on the part of the testator that the depletion allowance be granted in full to the trustees.

In support of this contention the Commissioner cites administrative regulations, legislative history, and Commissioner of Internal Revenue v. Netcher, *supra*. The regulations relied upon are Treasury Regulations 118, promulgated under the Internal Revenue Code of 1939, sections 39.23(*l*)–1 and 39.23(m)–1(c). These regulations were originally promulgated in 1928 and have been in effect for over thirty years without change.

Section 39.23(*l*)–1 relates to depreciation, and after using the language of section 23(m) of the Internal Revenue Code

of 1939, goes on to explain that section as follows:

"* * * for example, if the trust instrument provides that the income of the trust computed without regard to depreciation shall be distributed to a named beneficiary such beneficiary will be entitled to the depreciation allowance to the exclusion of the trustee, while if the instrument provides that the trustee in determining the distributable income shall first make due allowance for keeping the trust corpus intact by retaining a reasonable amount of the current income for that purpose, the allowable deduction will be granted in full to the trustee."

Section 39.23(m)–1(c) relates to depletion and provides in part:

"The principles governing the apportionment of depreciation in the case of property held by one person for life with remainder to another person and in the case of property held in trust are also applicable to depletion." [4]

These regulations not only sanction but require that a provision of a trust instrument placing a duty upon the trustee to retain part of oil well royalties as return of capital be interpreted as a direction from the trustor that all depletion allowances be granted to the trustees. Giving effect to these regulations, therefore, it must be held that there are pertinent provisions of the will so disposing of depletion allowances. It follows that the last clause of section 23(m), which governs only where there are no such provisions in the will, has no application in this case. See Commissioner of Internal Revenue v. Netcher, supra, dealing with similar statutory language relating to depreciation. [5]

■ Despite all that is stated above, however, this court could not, except in en banc proceedings, hold in favor of the Commissioner if in another case this court has reached a contrary result in deciding the same question. Petitioners argue that there is such a decision of this court, citing Estate of Little v. Commissioner, 9 Cir., 274 F.2d 718.

In Little, as in this case, the will which created the testamentary trust made no

4. The quoted regulations, having been in effect through many sessions of Congress in which the tax statutes were dealt with, have the force and effect of law. Crane v. Commissioner, 331 U.S. 1, 67 S.Ct. 1047, 91 L.Ed. 1301.

5. The wording of section 39.23(l)–1 of the regulations is almost identical with language contained in the reports of committees of Congress when the forerunner of section 23(m) was under consideration. Section 23(m) of the Internal Revenue Code of 1939 was first enacted in 1928. Act of May 29, 1928, 45 Stat. 791–883. It was then designated as section 23(l) and was preceded by section 23(k) dealing with depreciation, containing similar language. By the Act of May 10, 1934, 48 Stat. 680–772, sections 23(k) and (l) became sections 23(l) and (m), respectively. They are so designated in the Internal Revenue Code of 1939.

The purpose of adding to the internal revenue laws these new provisions relating to depreciation and depletion was explained in the report of the Senate Committee on Finance reporting the Internal

Revenue Bill of 1928 to the Senate. S. Rep. No. 960, 70th Cong., 1st Sess. (1928) p. 20; [1939–1 Cum.Bull. (Part 2) 409, 423]. After first stating in substance the new statutory language the report continues:

"For example, if the trust instrument provides that the income of the trust computed without regard to depreciation shall be distributed to a named beneficiary, such beneficiary will be entitled to the depreciation allowance to the exclusion of the trustee, while if the instrument provides that the trustee in determining the distributable income shall first make due allowance for keeping the trust corpus intact by retaining a reasonable amount of the current income for that purpose, the allowable deduction will be granted in full to the trustee. The bill contains similar provisions as to the deduction for depletion."

Like language was also used in the conference report on that bill. H.Conf. Rep. No. 1882, 70th Cong., 1st Sess. (1928), pp. 11–12 [1939–1 Cum.Bull. (Part 2) 444, 445]. See also, Carol v. Commissioner, 30 B.T.A. 443, 447.

express mention of the treatment of the depletion deduction. The trustees retained 27½% of the royalties and took credit for all of the depletion allowance in computing fiduciary tax returns. The income beneficiary in computing her tax returns took credit to the amount of royalty income she had received.

The Commissioner approved the action of the trustees and disapproved that of the beneficiary. Tax deficiencies were charged against the estate of the beneficiaries, which were sustained by the Tax Court, 30 T.C. 936. This court reversed, holding that since the will made no mention of the treatment of the depletion deduction, depletion allowance was to be apportioned on the basis of the trust income allocable to each as provided in the last clause of section 23(m).

In our opinion there is a major factual difference between the two cases which deprives Little of precedent value here. In this case the Sloan will as construed by the state court in its decree of May 19, 1953, required the trustees to retain part of the royalties as return of corpus. This being a direction by the testator, the inference arose therefrom that he also intended them to take the entire depletion allowance. This is established by the administrative regulations, legislative history, and Netcher case, all discussed above.

In the Little case the will did not require the trustees to retain part of the royalties as return of corpus. While they chose to do so in the exercise of discretion vested in them, this could not be regarded as a direction by the testator. Hence the fact that they voluntarily withheld some royalty as return of capital could not give rise to an inference that the testator intended them to take credit for all of the depletion allowance. There being no express or implied direction to that effect, it was necessary to give application to the last clause of section 23(m) providing that in the absence of any such direction, depletion allowance shall be apportioned on the basis of the trust income allocable to each.

Petitioners are correct in asserting that in the instant case the Tax Court's reliance upon its decision in Mary Jane Little, 30 T.C. 936, was misplaced. Since that decision was reversed, it does not support the Tax Court's decision here under review. Nevertheless, and for the reasons stated above, we believe that the reversal in Little does not require a like result here.

It is pointed out by petitioners that in Little this court found it unnecessary to discuss a decree entered by a Texas state court. We there stated that " * * in our view such decree could not affect the application of the plain provisions of Section 23(l) and (m) to the relevant facts before us." 274 F.2d at page 729.

In the Texas proceeding that state court was asked to determine the meaning of the term "net income" as used in the will. As already noted, the will involved in Little did not require the trustees to retain part of the royalties as return of capital, but gave the trustees complete discretion in this regard. However, this discretionary power was given up by the trustees in a subsequent settlement agreement among the interested parties. This agreement was recognized and considered by the Texas court in its decree. But this court disregarded that agreement for the purposes of determining the federal income tax question.

Thus, the Texas court was not construing the will alone but was interpreting it in conjunction with a subsequent agreement which was irrelevant for federal income tax purposes. Considered in this light, our decision in Little does not represent a ruling that this court would disregard a state court decree construing the will.

We do not consider ourselves free to construe the Sloan will de novo, the Alameda County court having already construed it as requiring the trustees to retain part of the royalties. This construction did not reflect the application of state law where the will contains no pertinent provisions, but a determination from a reading of the will as a

whole that this is what the testator intended.

Petitioners also argue that there was no real corpus to preserve, since the value of the part of the trust property from which royalties were later derived was nominal when the property was distributed to the trust. The Alameda County court apparently proceeded on the theory that the present value of the corpus is to be preserved. We will not go behind that determination.

We hold that under pertinent provisions of the will all of the depletion allowances were granted to the trustees.

We find no prejudicial error in the exclusion of certain exhibits consisting of the trustees' accounts and reports for three subsequent years together with the decrees settling them, and a summary of royalties received and allocated over a number of years.

Affirmed.