Fred A. Hubbard Apartments Trust, First Mortgage Bond Company, Inc., Trustee v. Commissioner.
Apartments Trust v. Commissioner
Docket No. 22835.
United States Tax Court
1951 Tax Ct. Memo LEXIS 357; 10 T.C.M. (CCH) 25; T.C.M. (RIA) 51006; January 12, 1951
*357 John M. Hudson, Esq., 1170 Penobscot Bldg., Detroit 26, Mich., for the petitioner. Cyrus A. Neuman, Esq., for the respondent. LEMIRE Memorandum Opinion LEMIRE, Judge: This proceeding involves a deficiency in income tax for the fiscal year ended July 31, 1945, in the amount of $484.59. Petitioner claims that there is an overpayment in the amount of $102.91. The sole issue to be decided is whether the petitioner is entitled to a deduction for depreciation sustained on the trust property in computing the taxable net income of the trust for that year. [The Facts] This case was submitted without a hearing upon a written stipulation of facts under Rule 30 of the Rules of Practice of this Court. The stipulated facts are so found and the stipulation filed is incorporated herein by reference. The material facts are as follows: The petitioner is a Virginia corporation with its principal office in Detroit, Michigan. Its income tax return for the taxable year ended July 31, 1945, was filed with the collector of internal revenue for the district of Michigan, at Detroit, upon the cash basis of accounting. By trust mortgage dated May 1, 1926, certain real estate property *358 in Detroit, known as the Fred A. Hubbard Apartments, was conveyed by Fred A. and Grace A. Hubbard to the petitioner, as trustee, to secure bonds in the face amount of $103,000 issued by the mortgagors. After the bonds were in default as to both interest and principal, proceedings for the foreclosure of the mortgage were instituted November 21, 1932, and the decree of foreclosure of the property was taken March 23, 1933. The petitioner, as trustee, acquired title to the property through foreclosure proceedings for the benefit of the bondholders when the period of redemption expired. Under the terms of the trust mortgage the petitioner was authorized to acquire and manage the property as directed by the holders of 51 per cent in interest of all the bonds outstanding. By agreement entered into as of May 1, 1933, between more than 51 percent in interest of all the bondholders and the petitioner as trustee, the petitioner was directed to acquire title to the property on behalf of the bondholders and the terms and conditions upon which the property should be managed, operated, and disposed of by the trustee for the benefit of the bondholders were determined. The agreement provided in pertinent *359 part as follows: "WHEREAS, the Trustees deem it beneficial to bondholders that the title to the premises be acquired on behalf of the bondholders through foreclosure proceedings or otherwise and that the property be maintained and handled on behalf of bondholders until such time as an advantageous sale can be made; and it is deemed necessary that a plan be adopted and followed for acquiring the same and for the the proper and effectual handling and ultimate disposal of said property for the benefit of bondholders. * * *
"1. This agreement and determination shall be effective and binding upon all bondholders and upon the Trustee if and when the holders of Fifty-one per cent (51%) in interest of all the holders of bonds secured by said mortgage now outstanding shall join herein by executing this agreement or executing separate concurrent instruments in writing signifying their participation herein and depositing their bonds as hereinafter provided. "2. * * * Should the Trustee obtain full title to the property through foreclosure sale or otherwise, then the Trustee shall thereafter hold, manage and dispose of the same on behalf of all bondholders as hereinafter stated. *360 "3. It is the intent that the property shall be put and maintained in good condition, and improved so far as needed, and the largest possible revenues derived therefrom, pending liquidation by sale thereof at a time when conditions are more favorable than at present. It is agreed that five (5) years' time [1] shall be allowed to liquidate, and that sale shall not be made earlier without the written consent of 51% in interest of all bondholders. It is understood that the Trustee may borrow moneys at any time to provide funds for the payment of taxes or other items in its judgment necessary in connection with its trusts hereunder and for the purpose of securing such loans the Trustee may mortgage said property, any such mortgage to be a first lien thereon, having priority over all other rights and interests. "4. Upon sale of said property the net proceeds shall be distributed pro rata to all bondholders. After paying the costs and expenses of operation, taxes, maintenance, protection and improvement of the property, including the reasonable compensation of the Trustee, any net earnings, in the judgment of the Trustee not required to meet *361 payments of moneys borrowed or otherwise in connection with the property, shall be distributed to bondholders pro rata; provided, that should income available for distribution in any one year exceed 3% upon the outstanding bonds the excess may be used by the Trustee to purchase at the lowest prices offered not exceeding the face amount thereof, interests represented by outstanding bonds; all bonds and interests so purchased shall be cancelled by the Trustee. "5. The Trustee shall have full power to hold, handle, manage, control, rent, lease, furnish, equip, improve, mortgage, sell, preserve and protect said property and collect the rents, issues and profits thereof in accordance with its best judgment and discretion, and no person having any transaction or dealing with the Trustee or the property shall be required to look beyond the Trustee nor be bound to inquire as to the authority of the Trustee in the matter involved nor as to the purpose of the Trustee's action nor to see to the application of any proceeds resulting therefrom, but as to all such persons the authority assumed by the Trustee shall be conclusively deemed to exist. As to all persons other than the bondholders the *362 Trustee shall be deemed to have all the powers, rights and privileges that an absolute owner would have, without condition or restriction, being accountable for its actions hereunder only to the bondholders. "6. The Trustee shall be entitled to reimbursement for all advances made by it and all for necessary expenses and attorney fees, and to reasonable compensation for its services in connection with this reorganization and its operations hereunder, and shall have a lien on the premises and upon any funds or property in its hands superior to all interests except such mortgage, if any, as the Trustee may place on the premises pursuant hereto. * * *
"9. This agreement shall be construed liberally to carry out its purposes. The Trustee shall be protected in acting upon any notice, request, consent, certificate, declaration or other paper or document or signature believed by the Trustee to be genuine and to have been signed by the proper party or parties, and in any action deemed by the Trustee authorized and proper hereunder, and shall not be liable for errors or mistakes nor for anything in good faith done or omitted, nor at all except for its own bad faith. The Trustee shall *363 not have any personal liability to third persons arising out of any debts contracted by it or otherwise, any such liability to be confined solely to the property and funds in its hands." Pursuant to the terms of the trust mortgage and the agreement of May 1, 1933, the petitioner operated the trust property on behalf of all the bondholders until February 20, 1946, when the property was sold. The petitioner administered the trust under the jurisdiction of the Circuit Court of Wayne County, Michigan, during the entire term of the trust. The bondholders exchanged their bonds for certificates of beneficial interest in the property issued by the petitioner. The petitioner registered the bonds and the certificates of beneficial interest in the names of the bondholders as evidence of their rights and beneficial interests in the trust property. During the term of the trust the petitioner, as trustee, made periodical financial statements of the receipts and disbursements of the trust with the holders of certificates of beneficial interest in the trust property and with the clerk of the circuit court. At the date the petitioner acquired the trust property for the benefit of the bondholders *364 the face amount of bonds outstanding was $103,000 and past due and unpaid property taxes, exclusive of interest and penalties, amounted to $10,007.73. Beginning with its fiscal year 1934 the petitioner filed income tax returns for the trust, claiming in each return a deduction from trust income for all depreciation sustained on the property. The respondent made several adjustments to the cost basis of the property and to the return of depreciation claimed in different years, which the petitioner accepted, but a deduction was allowed to the petitioner for depreciation in each year except the taxable year ended July 31, 1945. In the return filed for that year the petitioner claimed a deduction for depreciation of $2,175.01, computed on the basis and rate previously allowed by the respondent. Respondent determined that no deduction for depreciation on the property was allowable to the petitioner for that taxable year. For the taxable years 1934 through 1945 the gross income from the property, operating expense, net income before depreciation and income taxes, depreciation allowed, balance of net income after depreciation, amounts of income distributed to bondholders, and amounts of *365 income withheld by the petitioner for taxes, improvements, and reorganization and operating expenses were: Net Income
Depre-
Balance of
Fiscal
Gross
Operating
Before De-
ciation
of Net
Year
Income
Expense
preciation
Allowed
Income
1934
$ 5,966.65
$ 3,057.87
$ 2,908.78
$ 4,025.00
($1,116.22)
1935
10,343.22
8,361.13
1,982.09
4,855.30
( 2,873.21)
1936
11,966.27
7,485.48
4,480.79
4,856.80
( 376.01)
1937
13,752.44
7,881.21
5,871.23
4,856.80
1,014.43
1938
15,776.01
7,015.44
8,760.57
1,947.78
6,812.79
1939
14,306.13
6,875.13
7,431.00
1,949.87
5,481.13
2-1 to 7-31, 1939
7,048.50
4,381.00
2,667.50
1,007.06
1,660.44
1940
14,517.16
7,176.96
7,340.20
2,083.53
5,256.67
1941
15,445.04
6,920.14
8,524.90
2,219.29
6,305.61
1942
17,553.07
7,188.41
10,364.66
2,365.85
7,998.81
1943
16,636.41
6,821.94
9,814.47
2,336.75
7,477.72
1944
17,321.83
7,222.27
10,099.56
2,175.01
7,924.55
1945
18,203.85
7,978.53
10,225.32
* 2,175.01
8,050.31
$178,836.58
$88,365.51
$90,471.07
$36,854.05
$53,617.02
Fiscal
Amount
Amount
Year
Distributed
Withheld
1934
($1,116.22)
1935
( 2,873.21)
1936
$ 1,545.00
( 1,921.01)
1937
3,090.00
( 2,075.57)
1938
3,090.00
3,722.79 1939
3,090.00
2,391.13 2-1 to 7-31, 1939
1,511.25
149.19 1940
2,846.25
2,410.42 1941
2,686.50
3,518.11 1942
2,471.25
5,527.56 1943
2,385.00
5,092.72 1944
2,738.75
5,185.80 1945
3,902.50
4,147.81 $29,356.50
$24,260.52 *366 On February 20, 1946, the petitioner sold the trust property. The net proceeds of the sale were $71,599.58. On its income tax return for the period August 1, 1945, to February 20, 1946, the petitioner reported a net gain from the sale of $8,666.20, which the petitioner computed in accordance with the adjustments made by the respondent to the depreciable properties, basis and return of depreciation on the returns for prior years, except that the depreciation claimed by the petitioner for the taxable year 1945 was taken into account, although the Commissioner has disallowed the deduction of depreciation for that year. In 1946 the petitioner distributed to the holders of certificates of beneficial interest $89,971.05, representing the net proceeds of the sale of the property plus the net income from the current year's operations, plus accumulations from prior years' operations. The reconciliation of the final distribution to the holders of certificates of beneficial interest in the trust is as follows: Total distribution 1946
$89,971.05
Net income after depreciation 1946
$ 4,770.63
1946 depreciation
1,268.75
1946 net income before depreciation
$ 6,039.38
Net proceeds of sale
61,599.58
77,638.96
Prior accumulations distributed
$12,332.09
Prior years accumulated depreciation
$36,854.05
Net undistributed income
24,260.52
61,114.57
Past due property taxes
$10,007.73
Income taxes
4,525.10
Furniture, fixtures and equipment
5,632.55
Reorganization expense
8,067.00
Certificates bought
20,546.50
48,778.88
$12,335.69
Deduct withholding tax adjustment
3.60
Prior accumulations
$12,332.09
*367 [Opinion] The question here is whether the petitioner, as trustee, is entitled to a deduction for depreciation sustained on the trust property for the taxable year. The petitioner contends that the trust instrument, by conferring upon the trustee power to manage, improve, preserve, and protect the trust property as though it were the absolute owner of the property, authorizes it to set aside depreciation of the property to the end that the largest possible revenues might be derived therefrom. Respondent disallowed the depreciation deduction in its entirety in his notice of deficiency and contends that there is nothing in the trust instrument which may reasonably be construed as directing the trustee to keep the trust corpus intact by reserving depreciation upon it. Respondent concedes on brief, however that the trustee is entitled to a deduction of $ 6,322.82 / $10,225.32 of the depreciation of $2,175.01 sustained during the taxable year because it had discretion to withhold, and did withhold, $6,322.82 of the trust income of $10,225.32. Section 23 (1), Internal Revenue Code, provides that in computing net income a deduction shall be allowed for depreciation *368 of the property used in the trade or business or held for the production of income. It further provides that in the case of property held in trust the allowable deduction shall be apportioned between the trust beneficiaries and the trustee in accordance with the pertinent provisions of the instrument creating the trust, or, in the absence of such provisions, on the basis of the trust income allocable to each. It is clear from the provisions of the statute that there being no express direction in the trust instrument as to who shall take the depreciation deduction, we must examine the pertinent provisions in the instrument to ascertain the intention and purpose of the parties in creating the trust. The purpose of the trust was basically to hold and manage the trust property so as to derive the greatest possible revenues from it until such time as it could be sold advantageously. Pursuant to that purpose the trustee was given broad discretion to handle and operate the property. The trustee in the exercise of its discretion had power to withhold almost any amount from the trust income to cover the costs of operating and maintaining the property until the trust should be terminated *369 by sale of the property. The only interest of the trustee and the bondholders was to manage the property so as to realize the greatest possible returns from it in the form of both income from the property and proceeds from eventual sale of the property. No trust purpose would be served by increasing the beneficiaries' income at the expense of their capital or by increasing their return of capital at the expense of their income. The trustee received all the trust income and then withheld or distributed it within its discretion. To distribute the income to the bondholders means the same thing as to allocate income to them within the meaning of section 23(1) in the absence of any express direction in the trust instrument as to the handling of depreciation. Fleming v. Commissioner, 121 Fed. (2d) 7, affirming 43 B.T.A. 229; Newbury v. United States, 57 Fed. Supp. 168, certiorari denied, 323 U.S. 802. We conclude that the allowance for depreciation must be divided between the petitioner and the bondholders on the basis of the amounts of income withheld by the petitioner and the amounts allocated and distributed to the bondholders, as *370 now conceded by respondent. That respondent had allowed the deductions claimed by the petitioner for previous years, except for certain adjustments which the petitioner had accepted, is immaterial. Respondent had the right and it was his duty to change his determination if the facts, in his judgment, so required. Reynard Corporation, 30 B.T.A. 451; Shield Co., Inc., 2 T.C. 763. Decision will be entered under Rule 50. Footnotes
1. The five-year term was later extended.↩
*. This amount claimed and reported by petitioner but not allowed by respondent.↩