**ESTATE of Mary Jane LITTLE, Deceased, Bank of America National Trust and Savings Association, Executors, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 16308.**

United States Court of Appeals Ninth Circuit.

Jan. 19, 1960.

See publication Words and Phrases, for other judicial constructions and definitions of "Instrument Creating the Trust".

William L. Kumler, Wilson B. Copes, Los Angeles, Cal., for petitioner.

Howard A. Heffron, Acting Asst. Atty. Gen., David O. Walter, Lee A. Jackson, Robert N. Anderson, Attys., Dept., of Justice, Washington, D. C., for respondent.

Before STEPHENS and JERTBERG, Circuit Judges, and LINDBERG, District Judge.

JERTBERG, Circuit Judge.

Before us is a petition for review of a decision of the Tax Court. The opinion of the Tax Court is reported at 30 T.C. at page 936.

The petition for review involves federal income taxes for the calendar years 1949 through 1952.

The basic issue to be determined on this review is whether the Tax Court erred in holding that deceased taxpayer was not entitled to claim a portion of certain deductions for depreciation and depletion allowable for the tax years involved under Section 23(l) and Section 23(m) of the Internal Revenue Code of 1939, with respect to gas and oil properties held as trust corpus, and in holding that the trustee of a testamentary trust of which decedent was a life income beneficiary was entitled to claim the entire amount of such deduction.

The pertinent provisions of Section 23 (26 U.S.C.1952 Ed. Section 23) are:

"§ 23. Deductions from gross income.

"In computing net income there shall be allowed as deductions:

\* \* \* \* \* \*

"(l) Depreciation.—A reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

"(1) of property used in the trade or business, or

"(2) of property held for the production of income.

"In the case of property held by one person for life with remainder to another person, the deduction shall be computed as if the life tenant were the absolute owner of the property and shall be allowed to the life tenant. In the case of property held in trust the allowable deduction shall be apportioned between the income beneficiaries and the trustee in accordance with the pertinent provisions of the instrument creating the trust, or, in the absence of such provisions, on the basis of the trust income allocable to each.

"(m) Depletion.—In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, ac-

cording to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary. In any case in which it is ascertained as a result of operations or of development work that the recoverable units are greater or less than the prior estimate thereof, then such prior estimate (but not the basis for depletion) shall be revised and the allowance under this subsection for subsequent taxable years shall be based upon such revised estimate. In the case of leases the deductions shall be equitably apportioned between the lessor and lessee. In the case of property held by one person for life with remainder to another person, the deduction shall be computed as if the life tenant were the absolute owner of the property and shall be allowed to the life tenant. In the case of property held in trust the allowable deduction shall be apportioned between the income beneficiaries and the trustee in accordance with the pertinent provisions of the instrument creating the trust, or, in the absence of such provisions, on the basis of the trust income allocable to each."

The facts in the case before the Tax Court were all stipulated, as set forth in the stipulation of facts and documentary exhibits referred to therein, and such facts were found by the Tax Court accordingly. The following is a summary of the facts as contained in the opinion of the Tax Court, as supplemented by statements based upon and excerpts from certain of the exhibits which were a part of the record before the Tax Court:

Mary Jane Little died on or about September 10, 1953, a resident of Los Angeles County, California. Decedent filed her Federal income tax returns for the years 1949, 1950 and 1951 with the then collector of internal revenue and for the year 1952 with the district direc-

tor of internal revenue for the sixth district of California, Los Angeles, California. The Bank of America National Trust and Savings Association is the duly appointed and acting executor of the Estate of Mary Jane Little, deceased.

Decedent was the mother of Gloria D. Foster, who died on or about July 30, 1943, a resident of Dallas County, Texas. For many years prior to her death, Gloria conducted an oil business, owning, operating, developing and maintaining many producing oil and gas leases in the East Texas oil field. At the date of her death in 1943 she owned undivided interests in approximately 84 producing oil wells in this field and in the physical equipment used in connection therewith. The oil income distributed to Mary Jane Little as beneficiary of the Gloria D. Foster Trust during the years here involved (from which depletion and depreciation deductions here at issue were taken) was derived from these oil properties, or other subsequently acquired similar oil properties.

The last will and testament of Gloria D. Foster, deceased, was duly probated by order of the County Court of Dallas County, Texas, on August 16, 1943. The will named L. C. Webster, Sol Goodell and T. A. Knight executors. After providing for a few specific bequests of cash and personal effects, the residue of Gloria's property was devised and bequeathed to L. C. Webster, T. A. Knight and Sol Goodell as trustees. The trust provisions of the will are contained in Article "V" and in this portion of the will said trustees were given broad authority and discretion in connection with the management of the corpus, investments and reinvestments. Paragraph 2 of Article V of the will provided, in part, that the "decision of trustees as to what property is corpus and what property is income of [the] estate, shall be final and binding on all parties at interest hereunder. * * *" Paragraph 5 of Article V of the will also grants the trustees unqualified discretion in allocating trust receipts to income or corpus.

The will made no mention of the treatment of depletion and depreciation deduction as between income beneficiaries and the trust. Paragraphs 8 and 9 of Article V of the will provided as follows:

8. Out of the net income of my estate I direct that Two Hundred ($200.00) Dollars per month shall be paid to my faithful servant, Eva Culbertson, during her lifetime, and One Hundred ($100.00) Dollars per month shall be paid to my mother-in-law, Mrs. Jeremiah Foster, during her lifetime and thereafter to my sister-in-law, Evelyn Foster, during her lifetime. All other net income from my estate shall be paid to my mother, Mary Jane Little, during her lifetime. If during any calendar year after the calendar year during which I die, while my mother is alive, the net income so paid my mother is less than Twelve Thousand ($12,000.00) Dollars, I direct that at the end thereof trustees pay to her the difference out of the corpus of my estate if she so requests.

9. This trust shall terminate on the date of the death of my mother, Mary Jane Little. On termination of this trust, I direct that all the estate and properties constituting it that are then in the hands of trustees shall pass and vest in fees simple and by trustees shall be conveyed,

(a) one-half to Ann Armstrong Knight, if she then be living, and to her heirs per stirpes if she then be dead; and

(b) one-half to Marian Ralston Knight, if she then be living, and to her heirs per stirpes if she then be dead.

The trustees named in the will accepted the trust and allocated to the corpus of the trust so much of the income of the trust after operating expenses but prior to any deductions for depreciation and depletion as was equal to the amount of depreciation and depletion allowable for Federal income tax purposes with respect to such income.

Decedent, Mary Jane Little, proposed to institute proceedings to contest Gloria's will dated April 19, 1943, relying upon the validity of a prior will dated September 8, 1942. For the purpose of settling the threatened will contest a contract and agreement, dated September 20, 1944, was entered into by and between the interested parties. The contract and agreement provided, in part, as follows: (a) that the purpose of the "contract and agreement is to settle, adjust and compromise all matters in issue or controversy between any and all of the parties hereto;" (b) that the trustees named under Gloria's will (dated April 19, 1943) were to resign as trustees, and others were to be appointed; (c) a trust agreement was to be entered into by all beneficiaries under the will, with changes in the power and duties of the new trustees, and with changes in the rights of the beneficiaries.

Under Section II, heading 16, of the Contract and Agreement of September 20, 1944, the parties confirmed and agreed to the validity of the Gloria D. Foster will dated April 19, 1943, the validity of the probate thereof, further agreeing to defend against any attack against the will, "Subject to the conditions being met that are set out under headings 2, 3, and 5 above." Those conditions were that a declaratory judgment be obtained that the bequests to Ann Armstrong Knight and Marian Ralston Knight were not subject to the spendthrift trust provisions of the will, that the trustees resign and Mercantile National Bank at Dallas be the sole successor trustee, and that a trust agreement be entered into, which provided that one-half of the remainder go to the heirs of the deceased taxpayer. Under Section II, heading 6, the remaindermen were to convey their interests to the Mercantile National Bank at Dallas, and the latter was to become the sole successor trustee.

The trust agreement referred to in the Contract and Agreement of September 20, 1944, was executed by all the beneficiaries under date of November 14, 1944. The old trustees under the will resigned and were succeeded by the Mercantile National Bank at Dallas. First

parties thereunder were the remaindermen under the testamentary trust, second party was Mary Jane Little, third party was the Mercantile National Bank at Dallas.

Section I, paragraph 1, of the trust agreement recites that first parties have executed and delivered to the third party as trustee all their right, title and interest in the estate of Gloria D. Foster, deceased, vested or to vest in them under her will of April 19, 1943, except for minor specific bequest items.

Section I, paragraph 4 of the trust agreement of 1944 states:

"The will grants to the trustees thereunder broad discretion in determining what portion of receipts of the estate shall be allocated to corpus of the estate, and what portion of such receipts shall be allocated to income of the estate, and Third Party in the exercise of such discretion hereby undertakes to make this allocation at all times in accordance with the provisions of law applicable at the time without regard to such discretion so granted by said will."

Section II, paragraph 1, of the trust agreement of 1944 describes the character of the trust therein established as follows:

"1. The trust created under the aforesaid will of Gloria D. Foster, deceased, will terminate on the death of Second Party, and it is the intention of the parties hereto that thereupon Third Party shall hereunder come into the possession of and hold legal title to all the estate and properties constituting the net corpus of the trust created under said will at the date of termination of said trust that are then in the hands of trustee under said will."

Section II, paragraph 2 of the trust agreement of 1944 provided that prior to the death of Second Party, the trustee was to hold naked legal title to the interests conveyed to the trustee by First Parties.

After the death of Mary Jane Little, and providing that neither she nor her assignees, heirs, representatives or any person claiming through her attacked the Gloria D. Foster will, then under the new trust agreement one-half of the then corpus of the trust was to be distributed to Ann Armstrong Knight and Marian Knight Rowe in equal shares, or to their heirs per stirpes, and the other half of the then corpus of the trust was to be distributed to the heirs, representatives, legatees or assigns of Mary Jane Little.

On September 30, 1947, a suit was brought in the district court of Dallas County, Texas, by L. C. Webster, Sol Goodell and T. A. Knight, as independent executors of the Estate of Gloria D. Foster, deceased, against Mercantile National Bank at Dallas, as successor trustee of the Estate of Gloria D. Foster, deceased; Mary Jane Little, deceased; Talbot Shelton and Wharton E. Weems, as owners of one-half of the remainder interest in the estate; J. R. Bower, Jr., Ann Knight Bower, Frederick E. Rowe, Jr., and Marian Knight Rowe, as owners of the other half of the remainder interest in the estate. In their petition plaintiffs alleged that during the course of their administration they, as executors, had received proceeds from the sale of oil and gas from properties of the estate up to December 1, 1946, at which date the Mercantile National Bank at Dallas commenced collecting such proceeds; that they, as executors, had allocated to the corpus of the estate amounts representing "cost" depletion on oil produced and sold, together with depreciation on facilities, equipment, furniture, fixtures and the like, in accordance with practices employed by decedent, Gloria D. Foster, during her lifetime; that they, as executors, set forth such allocations of proceeds to corpus in their final account filed with the court, and they prayed that the court construe the will, particularly with reference to the meaning of the term "net income" as used therein, so as to approve their final account and to instruct them respecting the matter of what portion of funds in their hands rep-

resented net income and what portion was corpus and to discharge them from further liability and responsibility as executors.

In their answer the defendants, Ann Knight Bower, J. R. Bower, Jr., Marian Knight Rowe and Frederick E. Rowe, Jr., interposed a cross action wherein they alleged that the issue of proper allocation of the proceeds of sale of oil and gas between income and corpus after December 1, 1946 by Mercantile National Bank at Dallas, Trustee, was also in controversy as between themselves and Mary Jane Little and her assignees. The cross-complainants requested declaratory relief to the effect that the Mercantile National Bank at Dallas, trustee, be ordered to compute and allocate to corpus depletion based on cost or 27½ per cent, whichever was greater, plus depreciation based on the methods used by decedent, Gloria D. Foster, during her lifetime.

Paragraph 11 of the deceased taxpayer's answer in that proceeding contained the following:

"11.

"This defendant denies the allegations contained in Paragraph 11 of plaintiffs' petition and in respect of the several corresponding sub-paragraphs thereof alleges as follows:

"(a) Plaintiffs, as executors, in the exercise of their alleged discretion, have retained, as corpus from the proceeds of the sale of oil and gas an amount equivalent to depletion computed on a cost basis as shown in their Exhibit B. This defendant, however, alleges that neither the will nor the settlement agreement nor any of the exhibits mentioned therein contains any pertinent provision with respect to depletion, and that plaintiffs, as executors, were not vested with any discretion in respect of depletion or the apportionment of the proceeds of the sale of oil and gas between income and corpus, but instead were at all times bound to apportion such proceeds between income and corpus in accordance with the provisions of the Texas Trust Act applicable at the time, so that prior to April 11, 1945, they were required to apportion to corpus out of the net proceeds of the sale of oil and gas, after payment of expenses and carrying charges on such property, an amount equivalent to the amount permitted to be deducted for depletion under the then existing laws of the United States of America for Federal income tax purposes, and after April 11, 1945, were required to apportion to corpus twenty-seven and one-half (27½) per cent of the gross proceeds from the sale of oil and gas (but not to exceed fifty (50%) per cent of the net, after deducting the expense and carrying charges on the property).

"(b) Plaintiffs, as executors, were not entitled at any time to charge against income and to deduct therefrom, any amount for the depreciation of property used in the production of said oil and gas, because neither the will nor the settlement agreement nor any of the exhibits mentioned therein contains any pertinent provision with respect to depreciation, and that plaintiffs, as executors, were not vested with any discretion in respect of deducting depreciation or in the apportionment of the proceeds of the sale of oil and gas between income and corpus, but instead, the Texas Trust Act was at all times applicable and contained no provision authorizing any such deduction."

The court, by decision dated December 13, 1948, ordered, adjudged and decreed that L. C. Webster, Sol Goodell and T. A. Knight, as executors of the Estate of Gloria D. Foster, deceased, had properly computed depletion and depreciation and allocated correct and proper amounts to corpus for depletion and depreciation as shown by their final account. The

court specifically found, in paragraph VIII of its decision, as follows:

In determining the "net income" of decedent's estate, defendant, Mercantile National Bank at Dallas, as Successor Trustee of the Estate of Gloria D. Foster, Deceased, in accordance with the law applicable to said estate at this time, and until otherwise directed by a court of competent jurisdiction, is authorized, required and directed to charge and set aside to corpus reserves for depreciation on oil and gas lease equipment and machinery, and depletion, in the following manner:

(a) Depreciation: A reserve for depreciation on the oil and gas lease equipment and machinery belonging to said estate, commencing December 27, 1946, to be computed in the same manner and according to the same formula as the decedent did during her lifetime and as plaintiffs have done as shown by their final account, which reserve for depreciation shall be deducted from the proceeds of sales of runs of oil and gas produced by said estate subsequent to December 1, 1946, and set aside to corpus.

(b) Depletion: Out of the proceeds of oil and gas runs produced and sold and to be produced and sold from each oil and gas lease subsequent to December 1, 1946, compute, charge and set aside to corpus 27½% of the gross proceeds of such sales of runs from each lease (but not to exceed 50% of the net income from such lease after deducting the expense and carrying charges on such lease, including depreciation, but not including depletion).

Consistent with its judgment the court decreed that of the $43,091.91 in custody of the executors, $42,379.96 represented corpus of the Estate of Gloria D. Foster, deceased, and $711.95 was net income of said estate. The executors, having previously paid the former sum to Mercantile National Bank at Dallas, trustee, and the latter to Mary Jane Little, deceased, were discharged and acquitted of all other claims arising out of their administration. Mary Jane Little excepted to the

judgment of December 13, 1948, in open court, and gave oral notice of appeal, but this appeal was not perfected by her and the judgment became final.

Sproles & Woodard, certified public accountants, were the accountants who kept the books and records of Gloria D. Foster and prepared her income tax returns. These same accountants continued to keep the books and prepare the income tax returns of the Gloria D. Foster estate and trust after her death during the entire period here involved. The books of Gloria D. Foster, while living, regularly and consistently made a charge against income and set up a reserve for depletion of oil and gas properties and a reserve for depreciation of oil and gas equipment in accordance with standard accounting principles. Subsequent to her death, the estate and trust have regularly and consistently set aside to corpus a reserve for depletion of oil and gas properties and a reserve for depreciation of oil and gas equipment. Depletion was computed on the basis of "cost" (which was the practice of Gloria D. Foster while living) by the executors and trustees from August 1943 to December 1946, and thereafter the trust has used "percentage" depletion. Deductions for depletion and depreciation were claimed in the Federal income tax returns, throughout, consistent with the books of Gloria D. Foster, and, later, the books of her estate and trust.

In filing income tax returns for the Gloria D. Foster Trust, for the years here involved, the trustees computed and claimed as deductions the full amounts of allowable depletion and depreciation as follows:

| Year | Depletion Claimed | Depreciation Claimed |
|---|---|---|
| 1949 | $47,011.47 | $2,809.01 |
| 1950 | 47,348.24 | 2,552.21 |
| 1951 | 52,486.87 | 3,934.42 |
| 1952 | 52,478.44 | 4,205.44 |

Mary Jane Little, deceased, in her income tax returns for the years here involved, claimed a share of the deductions

for depletion and depreciation allowable in respect of income of the Gloria D. Foster Trust. This share was computed as follows:

Mary Jane Little—1949

Fiduciary Income

Gloria Foster Trust, Mercantile National Bank,

Dallas, Texas

I. Net Income of Trust for 1949 per
    Spriles [sic] and Woodard ......................... $ 92,128.02
  Deducted in Determining Net Income:
    Depletion ............................. $47,011.49
    Depreciation .......................... 2,809.01    49,820.50
  Net Income before depletion and
    depreciation ..................................... $141,948.52
  Distributed to Mary J. Little
    in 1949 ............................... $77,601.94
  Additional Amount distributable ............ 10,926.08
  Total distributable to
    Mary J. Little 1949 ..................... 88,528.02  $ 88,528.02

  Percentage of total distributable to
    Mary J. Little ................................. 62.3663%

II. Allocation of Income and of Deductions for Depletion and Depreciation

| | Taxable Net Income Before Deductions | Deductions | Taxable Net Income |
|---|---|---|---|
| Mary Jane Little 62.3663% | $ 88,528.02 | $31,071.20 | $ 57,456.82 |
| Other beneficiaries 2.5361% | 3,600.00 | 1,263.50 | 2,336.50 |
| Trust 35.0976% | 49,820.50 | 17,485.80 | 32,334.70 |
| Total 100% | $141,948.52 | $49,820.50 | $ 92,128.02 |

III. Taxable to Mary Jane Little
    Before Expense    $ 57,456.82
  Less Legal
    Expense    1,602.09
  Net Taxable    $ 55,854.73

A similar computation was made for each of the years 1950, 1951 and 1952, except for differences in the percentage of total distributable to Mary J. Little, deceased, in each of those years.

The trustee claimed the entire amount of deductions for depreciation and depletion allowable under Sections 23(l) and 23(m), Internal Revenue Code. Respondent, Commissioner of Internal Revenue, approved the deductions claimed by the trustee, and disallowed the portion thereof claimed by Mary Jane Little, asserting a deficiency in income tax against Mary Jane Little for the years 1949–1952, both inclusive.

The Tax Court sustained the Commissioner's determination that the entire

amounts were deductible by the trustee, holding "that a testamentary trust, as modified by a later trust agreement, constitutes the 'instrument creating the trust' within the provisions of subsections 23(l) and 23(m) of the Internal Revenue Code of 1939 and that under such instrument no portion of allowable deductions for depreciation and depletion is allocable to petitioner, an income beneficiary of the trust."

The reasoning of the Tax Court in arriving at its holding as set forth in the opinion is:

"The modification of 1944 made many changes in the Foster will trust but the one of interest here is that in paragraph 4, it removed the broad discretion of the trustee to allocate receipts to income and corpus and substituted a provision that the trustee 'make this allocation at all times in accordance with the provisions of law applicable at the time without regard to such discretion as granted by said will.'

"The pertinent provisions of law applicable at this time were embodied in the Texas Trust Act. Acts 1943, 48 Leg., p. 232, ch. 148 [Vernon's Ann.Civ.St. art. 7425b–1 et seq.]. This Act specifically provided for the rules to be followed, absent any specific provisions in the trust instrument, in the ascertainment of income and principal and in the apportionment of receipts and expenses between tenants and remaindermen. Section 27 of the Act provides that 'All income after deduction of expenses properly chargeable to it, including reasonable reserves, shall be paid and delivered to the tenant * * *.' Section 33 of the Act dealing with the situation where the trust property consists of oil properties, such as were owned by the Gloria D. Foster trust, provides that in such a situation 'Such percentage * * * as is permitted to be deducted for depletion under the then existing laws of the United States of America for federal income tax purposes shall be treated as principal and invested or held for the use and benefit of the remainderman, and the balance shall be treated as income subject to be disbursed to the tenant or person entitled thereto * * *.'

"The trust agreement of 1944, by reference to 'the law applicable at the time,' in paragraph 4, makes the foregoing statutory law of Texas a part of the agreement. It amounts to a provision of the trust instrument directing the apportionment of the allowable deductions between the income beneficiaries and the trustee, and the apportionment must be made in accordance with such provision. When we read the provisions of the foregoing statutory law of Texas into the trust agreement of 1944, it is clear that the trust is entitled to take the depreciation and depletion deductions in their entirety."

While appellant lists in its specification of errors five alleged errors on the part of the Tax Court, its basic contention before the Tax Court and on this review is that the "instrument creating the trust" was the will of Gloria D. Foster, and that since this will contained no provisions for the apportionment of charges for depletion and depreciation between the trustee and the income beneficiaries it follows that such charges must be apportioned on the basis of trust income allocable to each.

Before coming to grips with this basic contention, we will dispose of a subsidiary contention suggested by respondent in the statement that "A problem of construction would be present if the payments to the taxpayer had been made under the original terms of the will, unmodified by the trust agreement of 1944. Even there, however, as pointed out by the court below, there is a basis for finding that the intent of the testatrix was to set aside to corpus reserves for depletion and depreciation. So, even if we were to disregard the express terms of the trust in which the property was held

and under which the taxpayer received her income, to look at the earlier, and obsolete, terms, they could be construed as requiring the same disposition of the allowances for depletion and depreciation."

The "intent of the testatrix" is derived from the fact that the books and records of testatrix during her lifetime covering her oil operations show a regular and consistent charge against income, and a corresponding reserve for depletion of oil and gas properties and for depreciation of oil and gas equipment in accordance with standard accounting principles.

Regardless of the practice followed by the testatrix during her lifetime in respect to reserves for depreciation and depletion, it is clear that she did not provide specifically for the apportionment of deductions in her will, but on the contrary granted uncontrolled discretion in this regard to her trustees. If the testatrix had desired to apportion the allowable deductions for depletion and depreciation between the income beneficiaries and the trustees, then under the plain command of Section 23(l) and (m) she should have provided specifically for such apportionment in her will if she desired it to have that effect, since the sections provide that in the absence of such provisions the allowable deductions for depletion and depreciation shall be made on the basis of the trust income allocable to each. The will of Gloria D. Foster made no mention of the treatment of the depletion and depreciation deductions as between income beneficiaries and the trust. We find no merit in the Commissioner's suggestion that the provisions of the Foster will could be construed to support the decision of the Tax Court.

We are convinced, as apparently was the Tax Court, aside from the Commissioner's suggested contention appearing in the preceding paragraphs of this opinion, which contention we have rejected, that the grant in the Foster will of broad discretion to the trustees to allocate receipts to corpus or income does not constitute a direction to the trustees to apportion deductions for depletion or de-

preciation to the trustees, and that when, pursuant to such discretion, the trustees charged trust income and credited reserves for amounts covering depletion and depreciation, the legal effect thereof was an allocation of trust income rather than an apportionment of deductions for purposes of applying Section 23(l) and (m). See Fleming v. Commissioner of Internal Revenue, 5 Cir., 121 F.2d 7, affirming decision of the Tax Court appearing in 43 B.T.A. 229. If, therefore, the Foster will is "the instrument creating the trust" the decision of the Tax Court must be reversed since Section 23(l) and (m) requires that the deductions be apportioned in the manner in which they were apportioned in the returns of the deceased taxpayer. See Fred A. Hubbard, Apartments Trust, 10 T.C.M. 25. The Tax Court held, however, that the trust was not created by the Foster will, but rather "that a testamentary trust, as modified by a later trust agreement, constitutes the 'instrument creating the trust' within the provisions of subsections 23(l) and (m) of the Internal Revenue Code of 1939 * * *."

■■ Was the trust under which the income was received created by the Foster will, or was such trust created by the will modified by the later trust agreement? For our present purpose the critical word appearing in both sections 23(l) and (m) is the word "creating". The word "creating" is not defined in the Revenue Act. Generally speaking, the language of the Revenue Act, just as in any other statute, is to be given its ordinary meaning. Helvering v. William Flaccus Oak Leather Co., 313 U.S. 247, 61 S.Ct. 878, 85 L.Ed. 1310. In the absence of a definition of a word in the Revenue Act or its use in a context which shows that the word is to be given a special meaning, resort is to be had to the ordinary meaning of such words. There is nothing in the legislative history of the enactment of Sections 23(l) and (m) which shows that the word "creating" was used other than in its ordinary meaning. In its ordinary sense "creat-

ing" means the act of bringing something into being which did not exist before—to cause something to exist. Webster's New International Dictionary, Second Edition, Unabridged.

There is no dispute between the parties that the instrument which initially created the testamentary trust was the Foster will. That will was duly probated. The trustees named in the will accepted the trust and acted under it. The corpus of that trust included the oil wells and the physical equipment used in connection therewith which had been owned by the testatrix. The testamentary trust was not superseded by the later trust agreement. The Mercantile National Bank of Dallas, designated trustee under the trust agreement, was simply the successor trustee of the persons designated by the Foster will as the testamentary trustees, having been so appointed by the original trustees. The bank accepted said appointment as successor trustee. In several places in the trust agreement the bank acknowledged that it was acting as the trustee under the Foster will. The corpus administered by the bank as trustee and upon which the deductions for depletion and depreciation were taken for the tax years under review was the same corpus administered by the predecessor trustees. Two propositions clearly appear from the plain language of Section II, paragraphs 1 and 2 of the trust agreement, which read as follows:

"1. The trust created under the aforesaid will of Gloria D. Foster, deceased, will terminate on the death of Second Party [deceased taxpayer], and it is the intention of the parties hereto that thereupon Third Party shall hereunder come into the possession of and hold legal title to all the estate and properties constituting the net corpus of the trust created under said will at the date of termination of said trust that are then in the hands of Trustee under said will. The trust hereby created may for convenience be hereinafter referred to as the Foster Trust, and

it shall be governed by the terms of Section II hereof and by paragraphs 6 and 9 of Section I hereof to the same extent as if said paragraphs were restated herein."

"2. Prior to the death of Second Party [deceased taxpayer], Third Party shall hold naked legal title to the property conveyed it by the aforesaid deed made by First Parties with joinder of T. A. Knight as warrantor, and the rights, powers, and duties set out hereinafter under Section II shall be operative from and after the death of aforesaid Second Party."

The first proposition is that the testamentary trust would terminate by its own terms upon the death of the deceased taxpayer, and not by any provision of the trust agreement. The second proposition is that the only trust created by the trust agreement was a new trust therein designated as the "Foster Trust" which would, in effect, be a dry trust until the termination of the testamentary trust upon the death of the deceased taxpayer.

Attention should be called to the fact that under the settlement agreement the parties confirmed and agreed to the validity of the Gloria D. Foster will, the validity of the probate thereof, agreed to defend against any attack upon the will, and further agreed that "no question as to the validity of the will shall be initiated by any of the parties hereto for adjudication by the court."

We are unable to share the view of the Tax Court that the contractual agreement between the life tenant and the remaindermen under the testamentary trust, in respect to the rights of remaindermen and in respect to the discretion to be exercised by the trustee in the allocation of trust receipts, can be said to contribute to the bringing of the testamentary trust into being or to share in causing such trust to exist.

■ We hold that the testamentary trust created by the Foster will continued in existence until terminated by the

death of the deceased taxpayer, and it was the trust under which the income was received during the taxable years under review. Such will contained no pertinent provision apportioning the allowable deductions for depletion and depreciation and, therefore, under Section 23(l) and (m) such deductions would be apportioned between the beneficiaries and the trustee on the basis of the trust income allocable to each.

In view of the conclusion which we have reached, we deem it unnecessary to discuss the decree entered by the Texas court, since in our view such decree could not affect the application of the plain provisions of Section 23(l) and (m) to the relevant facts before us. The taxpayer having apportioned the deductions for depletion and depreciation in her tax returns in the manner required by said sections, the decision of the Tax Court accordingly is reversed.